## WILLIAMSON *v.* OSENTON.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 634. Submitted February 24, 1914.—Decided March 9, 1914.

The essential fact that raises change of abode to change of domicil is the absence of any intention to live elsewhere.

An ambiguous meaning will not be attributed to a phrase used in an agreed statement of facts on the assumption that the parties were by a quibble trying to get the better of each other; and so *held* that "an indefinite time" as applied to an intent to reside, referred to in such a statement, meant that no end to such time was then contemplated.

Where one changes his abode with no intention of returning to the former abode the motive is immaterial so far as change creates a citizenship enabling the party to sue in the Federal courts.

One's domicil is the technically preëminent headquarters that every person is compelled to have in order that his rights and duties that have attached to it by the law may be determined.

The identity of husband and wife is a fiction now vanishing.

In this country, a wife who has justifiably left her husband may acquire a different domicil from his, not only for the purpose of obtaining a divorce from him, *Haddock* v. *Haddock*, 201 U. S. 562, but for other purposes, including that of bringing an action for damages against persons other than her husband.

*Quære,* whether the same is the law in England.

THE facts, which involve the question whether a married woman may, under certain conditions, acquire a domicil different from that of her husband, are stated in the opinion.

*Mr. W. E. Chilton, Mr. A. O. Bacon* and *Mr. S. W. Walker* for Williamson:

All questions of jurisdiction must be determined by the status of the parties at the time of the institution of the

suit. A subsequent divorce will not aid defendant in error in maintaining jurisdiction in the Federal court. *Mansfield* v. *Swan*, 111 U. S. 379; *Metcalf* v. *Watertown*, 128 U. S. 586; *Stevens* v. *Nichols*, 130 U. S. 230; *Jackson* v. *Allen*, 132 U. S. 34; *Mattingly* v. *Railway*, 158 U. S. 53; *Insurance Co.* v. *Tempkins*, 41 C. C. A. 490; *Brizel* v. *Salt Co.*, 73 Fed. Rep. 13.

Even if husband and wife can have different citizenships in different States at the same time, the record does not show that the wife, in fact, gained a citizenship in Virginia prior to the institution of this suit.

A married woman cannot, even where she has grounds for leaving her husband, acquire another domicil, except for the purpose of bringing a suit directly involving the marriage relation.

At common law a wife could not have any existence separate from her husband, nor even civil rights, nor separate personal estate, and she could not have a separate domicil. The fact that she lived apart from her husband; that they had separated by agreement; or that the husband had been guilty of misconduct, such as would furnish a defense to a suit by him for restitution of conjugal rights, did not, in England, enable the wife to acquire a separate domicil. *Warrender* v. *Warrender*, 2 C. & F., H. L., 488; *Dolphin* v. *Robins*, 7 H. L., 390; *Yelverton* v. *Yelverton*, 1 Swab. & Trist. Probate, 574; 2 Bishop on Marriage and Divorce (4th ed., § 129).

In the United States it has been held that a divorce *a mensa et thoro* gives the wife all the rights to acquire a separate domicil for all purposes, and she can sue her husband in the Federal court as a citizen of another State than his. *Barber* v. *Barber*, 21 How. 482; *Bennett* v. *Bennett*, Deady, 299.

Even without judicial separation a woman can acquire a separate domicil for the purpose of an action against her husband if the husband commit acts that would

entitle her to a judicial separation or divorce. *Ditson* v. *Ditson,* 4 R. I. 87; *Hartean* v. *Hartean,* 14 Pick. 181.

Even that she can go to another State and acquire a domicil for purposes of such action is upheld. *Atherton* v. *Atherton,* 155 N. Y. 129; *Hunt* v. *Hunt,* 72 N. Y. 217; *White* v. *White,* 18 R. I. 292; *Smith* v. *Smith,* 43 Louisiana, 1140; *Irby* v. *Wilson,* 1 Dev. & B. Eq. 568, 582.

For the difference between a direct and a collateral application of the rule that the wife may acquire a new domicil, see *Barber* v. *Barber,* 21 How. 582; *Hartean* v. *Hartean,* 14 Pick. 181, 185; *Calvin* v. *Reed,* 55 Pa. St. 379.

Without the provocation of wrongful acts which entitle her to a divorce, or without a judicial separation, a wife cannot establish a domicil separate from that of her husband. *Anderson* v. *Watt,* 138 U. S. 694; *Cheely* v. *Clayton,* 110 U. S. 706; *Loker* v. *Gerald,* 157 Massachusetts, 42.

Even in a voluntary separation, that is without ground upon which a separation or a divorce could be maintained, the wife can acquire a domicil that would give the court of her residence jurisdiction to settle her estate despite the domicil of her husband being in another jurisdiction. *Matter of Florence,* 54 Hun (N. Y.), 328; *Rundle* v. *Van Innegan,* 9 Civ. Pro. Rep. (N. Y.) 330; *Lyon* v. *Lyon,* 30 Hun, 455; *Schute* v. *Sargent,* 67 N. H. 305; but see *Matter of Wickes,* 128 California, 270.

Thus, for divorce, the American courts have held that a wife can acquire a domicil separate from that of her husband, and even if separated without judicial decree, in New Hampshire and New York the courts of her actual residence can administer on her estate.

In the case under consideration it may be admitted from the fact that the plaintiff below subsequently obtained a divorce from her husband, that she had grounds to leave his domicil and acquire another for the purpose of suing him.

She did not, however, acquire another domicil in Virginia

for the purpose of obtaining a divorce, and if she had, she could not have sued for divorce in the Federal court, but would have been confined to the state courts.

As she had not been judicially separated from her husband when she instituted this suit, she could not, for the purpose of suing a third party for damages, claim her right to sue as a citizen of Virginia, because of wrongful acts committed by her husband. *Thompson* v. *Stolman,* 139 Fed. Rep. 93; *Nicholas* v. *Nicholas,* 92 Fed. Rep. 1.

The agreed facts establish the lack of jurisdiction in the Federal court as much by what they fail to show as by what they show. *Morris* v. *Gilmer,* 129 U. S. 328. This was a pretended change of domicil, and not an actual one; an ostensible removal to Virginia and not a permanent taking up of her residence in that State, *animo manendi.*

To show how careful this court has been to confine its jurisdiction in cases of this kind to those which arise between actual citizens of different States, see *Inhabitants* v. *Stebbins,* 109 U. S. 341; *Eberly* v. *Moore,* 24 How. 147; *Williams* v. *Nottawa,* 104 U. S. 209; *Hawes* v. *Contra. Co.,* 104 U. S. 450; *Detroit* v. *Dean,* 106 U. S. 537; *Hayden* v. *Manning,* 106 U. S. 586; *Farmington* v. *Pillsbury,* 114 U. S. 138; *Cashman* v. *Amador Co.,* 118 U. S. 58; *Little* v. *Giles,* 118 U. S. 596; *Quincy* v. *Steel,* 120 U. S. 241; *Morris* v. *Gilmer,* 129 U. S. 315; *Shreveport* v. *Cole,* 129 U. S. 36; *Nashua* v. *Boston,* 136 U. S. 356; *Lehigh* v. *Kelly,* 160 U. S. 327; *Lake County* v. *Dudley,* 173 U. S. 243; *Corbus* v. *Alaska Co.,* 187 U. S. 455; *Dawson* v. *Columbia Ave. Co.,* 197 U. S. 178; *Jones* v. *League,* 18 How. 76; *Anderson* v. *Watt,* 138 U. S. 694. *South Dakota* v. *North Carolina,* 192 U. S. 311, and the other cases cited by defendant in error, such as *Dickerson* v. *Northern Trust Co.,* 176 U. S. 181, have no application here.

While usually the court will not inquire into the motives of a party in doing an act such as making an assignment or

changing his domicil, the court will not hold that one is not a citizen of a State when, in fact, he is a citizen, solely because his purpose in becoming such a citizen was to enable him to bring a suit.

The authorities cited by defendant in error can be distinguished.

*Mr. R. G. Linn, Mr. Connor Hall* and *Mr. C. Beverley Brown* for Osenton.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here upon the certified question whether the plaintiff, when she began this suit, was a citizen of Virginia in such sense as to be entitled to maintain her action in the District Court of the United States for the Southern District of West Virginia. The plaintiff, (the defendant in error), at that time was the wife of a citizen of West Virginia, but, in consequence of his adultery as she alleged, had separated from him and had gone to Virginia. Before bringing this action she had brought a suit in West Virginia for divorce, and pending the present proceeding obtained a divorce *a vinculo*. This action is for damages, alleging the defendant to have been a party to the adultery. The defendant pleaded to the jurisdiction setting up the plaintiff's marriage and the residence of her husband in West Virginia; in other words that the requisite diversity of citizenship did not exist. The plea seems to have been heard upon a written statement of facts in which it was agreed that the plaintiff went to Virginia "with the intention of making her home in that State for an indefinite time in order that she might institute this suit against the defendant in the United States Court," together with the facts already stated. The plea was overruled, there was a trial on the merits at which the

plaintiff got a verdict for $35,000, and thereupon the case was taken to the Circuit Court of Appeals, from which the certified question comes.

On these facts the question certified is divided into two by the argument: first, whether if able so to do the plaintiff had changed her domicil from West Virginia to Virginia in fact; and, second, supposing that she had changed it so far as to have enabled her to proceed against her husband in Virginia had she been so minded, whether for other · purposes her domicil did not remain that of her husband until the divorce was obtained, which was after the beginning of the present suit. Premising that if the plaintiff was domiciled in Virginia when this suit was begun she was a citizen of that State within the meaning of the Constitution, Art. III, § 2, and the Judicial Code of March 3, 1911, c. 231, 36 Stat. 1087; *Gassies* v. *Ballon,* 6 Pet. 761; *Boyd* v. *Thayer,* 142 U. S. 135, 161; *Minor* v. *Happersett,* 21 Wall. 162; we will take these questions up in turn.

The essential fact that raises a change of abode to a change of domicil is the absence of any intention to live elsewhere, Story on Conflict of Laws, § 43—or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode. Conflict of Laws, 2d ed. 111. We may admit that if this case had been before a jury on testimony merely that the plaintiff intended to live in Virginia for an indefinite time, it might have been argued that the motive assigned for the change, the bringing of this action, showed that the plaintiff, even if telling the literal truth, only meant that she could not tell when the law suit would end. It is to be noticed also that the divorce proceedings were carried through in West Virginia, though it is fair to assume that they were begun before the plaintiff moved. But the case was submitted to the court upon a written statement, upon which we presume both sides expected the court to rule. To give the supposed ambiguous

meaning to the words 'for an indefinite time' in that statement would be to assume that the parties were trying to get the better of each other by a quibble. We must take them to mean: for a time to which the plaintiff did not then contemplate an end. If that is their meaning, the motive for the change was immaterial; for, subject to the second question to be discussed, the plaintiff had a right to select her domicil for any reason that seemed good to her. With possible irrelevant exceptions the motive has a bearing only when there is an issue open on the intent. *Cheever* v. *Wilson*, 9 Wall. 108, 123. *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 191, 192. With that established as agreed there is no doubt that it was sufficient to work the change. *Mitchell* v. *United States*, 21 Wall. 350, 352. Dicey, Conflict of Laws, 2d ed. 108, 113, 114.

The second subdivision of the question may be answered with even less doubt than the first. The very meaning of domicil is the technically preëminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined. *Bergner & Engel Brewing Co.* v. *Dreyfus*, 172 Massachusetts, 154, 157. In its nature it is one, and if in any case two are recognized for different purposes it is a doubtful anomaly. Dicey, Conflict of Laws, 2d ed. 98. The only reason that could be offered for not recognizing the fact of the plaintiff's actual change, if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute. *Haddock* v. *Haddock*, 201 U. S. 562, 571, 572. This she may do without necessity and simply from choice, as the cases

show, and the change that is good as against her husband ought to be good as against all. In the later decisions the right to change and the effect of the change are laid down in absolute terms. *Gordon* v. *Yost,* 140 Fed. Rep. 79. *Watertown* v. *Greaves,* 112 Fed. Rep. 183. *Shute* v. *Sargent,* 67 N. H. 305. *Buchholz* v. *Buchholz,* 115 Pac. Rep. 88. See *Haddock* v. *Haddock, sup., Barber* v. *Barber,* 21 How. 582, 588, 597, 598. We see no reason why the wife who justifiably has left her husband should not have the same choice of domicil for an action for damages that she has against her husband for a divorce.

*We answer the question, Yes.*