## In re GUARY.

(District Court, S. D. New York. March 11, 1921.)

1. **Aliens** ⟨⟩61—**Alien wife of alien husband cannot become naturalized citizen.**

    The alien wife of an alien husband cannot become a naturalized citizen of the United States.

2. **Aliens** ⟨⟩68—**Petition for naturalization must be "duly verified" before clerk.**

    Under Naturalization Act June 29, 1906, § 4, subd. 2 (Comp. St. § 4352), requiring a petition for admission to citizenship to be "duly verified,"

such verification must be made before the clerk of the court or his authorized deputy as is required of the declaration of intention by paragraph 1 of said section.

[Ed. Note.—For other definitions, see Words and Phrases, Duly Verified.]

**3. Aliens ⊝⇒68—Service of notice on district attorney in naturalization proceeding sufficient.**

Service on the district attorney of notice of a motion by petitioner for naturalization *held* sufficient.

Naturalization. In the matter of the petition of Margaret Guary for admission to citizenship. Petition denied.

Patterson, Eagle, Greenough & Day, of New York City (Carroll G. Walter, of New York City, of counsel), for petitioner.

Merton A. Sturges, of Chicago, Ill., Chief Naturalization Examiner, opposed.

KNOX, District Judge. On September 13, 1913, Margaret Guary filed in this court her declaration of intention to become a citizen of the United States. She was, and still is, the wife of Paul Guary, an alien, whom she married in the year 1907, at Pittsburg, Pennsylvania.

Paul Guary was born in Hungary, and is now thought to live there. He and petitioner lived together in Pittsburg until 1912, at which time they separated. Petitioner then came to New York, and has since resided here. In 1913 Paul Guary commenced an action for divorce, or separation, from his wife upon the ground of desertion. No defense was interposed to the action. The same, however, was never brought on for trial, and no decree of divorce was granted therein. The same year Paul Guary returned to Hungary, and at last accounts was residing there. Since 1913 he has not contributed to the support of his wife, nor has he communicated with her. One child was born of petitioner's marriage to a former husband, and this child now resides with the mother. Petitioner herself was born in Hungary and emigrated to the United States from Rotterdam, Holland, on or about May 5, 1905.

Upon September 2, 1920, she presented in duplicate, to the deputy clerk of this court, in charge of naturalization, a petition for naturalization containing an amplified statement of the foregoing facts together with the necessary statutory allegations. At the time she tendered the clerk the fees required by law, and requested that the said petition be filed as the petitioner's application for citizenship. The clerk refused to accept the fees and to file said petition upon the ground that it appeared upon the face thereof that petitioner was a married woman whose husband was an alien, and whose marriage relation to her husband had not been dissolved by death or decree of court, and that, consequently, she was not a person entitled to be naturalized. When said petitions were first presented to the clerk the same had not been signed or sworn to by petitioner, and she thereupon offered to sign the same, and requested the clerk to take her affidavit. He declined so to do.

⊝⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petitioner then appeared before a notary public in this city, and subscribed and swore to said petitions. After so doing they were again presented to the clerk for filing, who once more declined to receive and file them. Thereupon petitioner gave notice of motion to the clerk of court and to the United States attorney for this district that she would upon the 9th day of September, 1920, move the court for an order requiring the clerk thereof to file said petition as prayed for in her supporting affidavits. It will be noted that no notice was given to any representative of the Department of Labor.

This motion came on for hearing before Judge Manton, then sitting in the District Court; and, there being no appearance in opposition thereto, the motion was granted, and the clerk was directed to receive from the petitioner the fees required by law and to file the petition presented to him by petitioner on September 2, 1920, and thereupon to proceed with the same as required by law. The order further provided that the filing of the petition be made by physically annexing the original of said petition, together with the notice of motion and affidavits in the order recited, and the order itself, to the page of the volume of petitions for naturalization then in use by the clerk next succeeding the page embodying the last petition filed with him prior to the presentation of the petition in question. It was further ordered that such filing be deemed to have been made as of the date when said petition was first presented to the clerk, to wit, September 2, 1920.

Attached to the petition were the statutory affidavits of two witnesses who certified to their acquaintance with the petitioner and their knowledge of her residence in the United States for the requisite period, and to their personal knowledge that petitioner was a person of good moral character and attached to the principles of the Constitution of the United States.

In due course petitioner's application for admission to citizenship came before me upon the naturalization calendar, and she, together with her witnesses, were present in open court. When the case was called objection was made to petitioner's admission to citizenship by the Department of Labor upon the grounds (1) that the petition was not on the regulation printed blank in the bound volume of petitions for naturalization; (2) that the petition was not verified before the clerk or one of his deputies, but before a notary public; (3) that the notice of motion, made by the petitioner as hereinbefore recited, was not given to the Naturalization Bureau of the Department of Labor; and (4) that if petitioner were to be granted citizenship she would have an alien husband.

[1] I first consider the objection last above stated, and I am clearly of the opinion that the petitioner must have her application for citizenship denied. The question here presented was squarely raised in the Circuit Court of Appeals for this circuit in United States v. Cohen, 179 Fed. 835, 103 C. C. A. 28, 29 L. R. A. (N. S.) 829. It was there held that the alien wife of an alien husband cannot become a naturalized citizen of the United States. It would, indeed, be an anomaly if the wife of an alien husband could become a citizen of the United

States, when by section 3 of the Expatriation Act of March 2, 1907 (Comp. St. § 3960), it is expressly provided that any American woman who marries a foreigner shall take the nationality of her husband. It is true that said section further provides that at the termination of the matrimonial relation an American woman may resume her citizenship, if abroad by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein.

It will be noted that an American woman may resume her citizenship only at the termination of her marital relation with an alien. To legally terminate such relationship either death or decree of a court of competent jurisdiction must intervene. In the present instance the marital relation between petitioner and her alien husband continues; and, notwithstanding, counsel for petitioner, upon the authority of Williamson v. Osenton, 232 U. S. 619, 34 Sup. Ct. 442, 58 L. Ed. 758, attempts to distinguish this case from that of the United States v. Cohen, supra. I cannot agree that the distinction is a valid one.

In Williamson v. Osenton, supra, the wife of a citizen of West Virginia had separated from her husband in the last-mentioned state and gone to Virginia with the intention of there making her home. She subsequently brought suit in the United States District Court for West Virginia against a citizen of West Virginia not her husband. The question arose, and was certified to the Supreme Court, as to whether the wife, when she began her suit, was a citizen of Virginia in such sense as to be entitled to maintain her action in the District Court of the United States for the Southern District of West Virginia. It was held that a wife who has justifiably left her husband may acquire a different domicile from his not only for the purpose of obtaining a divorce from him (Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1), but for other purposes, including that of bringing an action for damages against persons other than her husband. In the course of its opinion the Supreme Court said that the identity of husband and wife is a fiction now vanishing. This is doubtless true as respects matters of jurisdiction in the bringing of civil suits and as to a wife's competency as a witness against her husband, and perhaps in other particulars.

It is, nevertheless, the fact that the discussion in the Supreme Court in Williamson v. Osenton, supra, was in terms of domicile rather than of citizenship. In that case the wife was none the less a citizen of the United States because she had a domicile in, and was a citizen of, a state different from that of her husband. I am of opinion that there is a marked difference between the diversity of citizenship which exists as between a citizen, for example, of the state of New York and a citizen of the state of New Jersey (both of whom are citizens of the United States) and the diversity of citizenship which exists as between a citizen of the United States and a citizen of a foreign country. Support for this view is to be had in Marks v. Marks (C. C.) 75 Fed. 321, where it was said that persons may be citizens of the United States

without being citizens of any state. In fact, the Supreme Court itself, in the Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394, held that there is a citizenship of the United States and a citizenship of a state, which are different from each other.

Domicile and citizenship within a particular state have a bearing upon the place where the fundamental rights, privileges, and immunities belonging to a citizen of the United States may be claimed or asserted; but such domicile and state citizenship, in my opinion, fall far short of entitling the wife of an alien husband to be admitted to national citizenship. I accordingly hold that the authority of United States v. Cohen, supra, upon the proposition here involved, is in no way impaired or qualified by Williamson v. Osenton, supra.

[2] What has been said would·be sufficient to warrant a denial of the petition; inasmuch, however, as the Bureau of Naturalization strongly objects to the sufficiency of the petition itself, it may not be improper to make some observations thereon. By the act of June 29, 1906 (34 Stat. 596), Congress provided an elaborate system under which the details of naturalization proceedings are to be carried out. The law specifies the forms whereon declarations of intention and petitions for naturalization shall be made; it is declared how such papers shall be filed, bound, numbered, and indexed; and in the execution of these features of the law, the clerk of court is charged with no little responsibility.

By section 4 of the act (Comp. St. § 4352) the declaration of intention shall be made upon oath "before the clerk of the court, or his authorized deputy." In another paragraph of the same section it is said that a declarant, "not less than two years nor more than seven years after he has made such declaration of intention * * * shall make and file, in duplicate, a petition in writing, signed by the applicant * * * and duly verified. * * *" The government, through the Bureau of Naturalization, takes the position that the words "duly verified" mean a verification before the clerk of the court or his duly authorized deputy, and not before a notary public or other officer, and that the context of the section and its relation to what precedes makes such construction reasonable and proper. With this contention I agree.

It seems to me that, if it once be declared lawful for these petitions to be verified before persons not specifically charged with the administration of the naturalization law, the way is opened for the gravest kind of frauds. I shall not stop to comment upon the history of the administration of the law prior to the enactment of the present statute, further than to remark that formerly the opportunity for fraud was greater than it now is. If it be true that, when petitioner presented herself to the clerk of the court and asked to make, file, and to be sworn to the petition, and that official refused to act, petitioner's remedy, it seems to me, was not to make a typewritten petition, swear to it before a notary public, and ask to have such petition filed, but was to institute, as against the clerk, such proceedings as are appropriate to compel the performance by a subordinate officer of a ministerial duty. Had this been done, it is doubtless possible that the present

petition would have been presented upon the statutory forms and all other requirements of the act complied with.

The matter complained of is, in my judgment more than one of form; the possibilities arising from a departure from the statutory requirements are such as to readily convince me that much of substance is involved. The necessity of a strict compliance with the requirements of the Naturalization Act is emphasized by what was said by the Supreme Court in United States v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321. Nevertheless, in view of the government's default upon the return day of petitioner's motion for an order directing the clerk to receive and file the instance petition, I am not disposed, to petitioner's prejudice, to vacate that order. If the government desires such relief it should, I think, make application therefor to the judge who made the order.

[3] The Bureau of Naturalization explains the default upon the ground that it did not receive notice of petitioner's motion, and that such notice should have been given. I will not so hold. Under section 11 of the Act of June 29, 1906 (Comp. St. § 4370), the United States shall have the right to appear before any court or courts exercising jurisdiction in naturalization proceedings. The section is silent as to the officer through whom such appearance is to be made. Section 15 (Comp. St. § 4374) expressly provides for the appearance of the United States attorney in certain cases. The Supreme Court in the Ness Case, supra, said that the sections are intended to provide cumulative protection to the United States. I think, therefore, that the matter of appearances upon behalf of the government and the relationship of officers charged with responsibility under the act as between themselves should be a matter of departmental regulation, rather than of court decision.

Petitioner's application for citizenship is denied.