In the Matter of HELEN ORLINS, on Behalf of DAVID R. ORLINS, Petitioner, v. LOUIS S. ORLINS, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Bronx County, April 17, 1936.

*Paul Windels, Corporation Counsel [Rose Schneph, Assistant Corporation Counsel, of counsel], for the petitioner.*

*Samuel Mandel, for the respondent.*

PANKEN, J. This matter comes on before me on an application for support of David R. Orlins, an infant, made by his mother who was divorced from the respondent, his father. The decree of divorce was entered in a court of competent jurisdiction in the State of Connecticut. The custody of the child, the infant and the petitioner herein, by said decree, was awarded to the mother.

The said David R. Orlins is now sojourning in South Norwalk, Conn. The respondent and his ex-wife, who appeared on behalf of the child, are both residing in the State of New York.

The facts above set forth are undisputed and form the basis for the determination and the order thereon herein.

The question upon which I am to pass and upon which there was an issue, is whether an order can be made in this court requiring the respondent to provide for the support and maintenance of his child in view of the fact that the child is now sojourning away from and finds itself physically outside of the jurisdiction of this court — outside of the State of New York.

The law is that the domicile of the parents is the domicile of their children. The sojourn by the infant child in this proceeding in the State of Connecticut and the fact that its custody was awarded to the mother does not change the principle of law. Whether the domicile of the child would be that of the mother or that of the father is not important in so far as my determination is concerned in this proceeding. Both father and mother are domiciled in the State of New York.

The obligation to provide for one's offspring survives the dissolution of the wedlock, the result of which was the child.

The respondent is in law required to support and maintain the petitioner herein. That is his primary obligation. The facts warranting an order requiring him to contribute towards the support of the child, the order will follow as a matter of law and also as a matter of good morals.

The law, as I understand it, does not relieve the parent or the one standing *in loco parentis* from supporting a dependent if such dependent is not for the time being within the jurisdiction of the court making the order. It is conceivable that a child might be removed to a foreign jurisdiction for the purpose of attendance at school or to meet the needs of its mental, spiritual and physical health; such school might be located elsewhere than the domicile of the parent chargeable with the support.

Section 91 of the Domestic Relations Court Act, subdivision 1, thereof, reads as follows: " Jurisdiction within the city to hear and determine all proceedings to compel the support of a wife, child or poor relative."

As the statute stood, the obligation of a parent to support his child or children flowed aside from the natural law, also from legislative enactment. That was also true under the common law. It is true as a matter of morals and in response to natural law.

In *Matter of Thorne* (240 N. Y. 444) the court, speaking through Mr Justice POUND, said:

" Why at common law was the domicile of an infant necessarily that of the father? Not because the child actually resides with him and is a part of his family. Rather because of the *patria potestas* of the father; the tutelege of the child and the headship of the family of which the child is a part; the reciprocal rights and duties of father and child. ' The legal inseparability of father and child is essential to their mutual legal obligations.' (Beale on Domicil of an Infant, 8 Cornell Law Quarterly, 103.) Even though the child is in fact living apart from the father, his legal domicile was nevertheless with the father. (*Murdock* v. *Ward*, 67 N. Y. 387.) When the father dies the dead hand does not hold the child at the father's domicile. The mother becomes the head of the family. She succeeds to his rights and duties. She may determine where the infant may live. His domicile automatically in legal contemplation attaches to hers. This right rests not on the actual custody of the child but on the right of the mother, the *matria potestas.* * * *

" The infant, generally speaking, has no legal residence of his own, whatever his place of abode may be. In this connection the extension of the mother's right of joint guardianship seems relevant as bearing on the practical result. The identity of person of husband and wife is no longer a fetish of the law. The residence of the infant is no longer exclusively that of the father. It may be the residence either of the father or the mother. As the mother is the joint guardian of the children with the husband, if the wife has selected her own domicile, as she may, whenever it is necessary or proper for her to do so (*Williamson* v. *Osenton*, 232 U. S. 619; *Shute* v. *Sargent*, 67 N. H. 305; *Matter of Florance*, 54 Hun, 328), and the child lives with her, the domicile of the mother is for the time being the domicile of the child. Her rights of custody are equal to those of the father. * * *

" Her domicile fixes the domicile of the child, ' the technically preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached

to it by the law may be determined.' (HOLMES, J., in *Williamson* v. *Osenton, supra*, p. 625.) Otherwise the child has no domicile for an infant cannot choose a residence. The child resides with his mother in the contemplation of the law, even though he be living elsewhere."

The Domestic Relations Court Act has been amended on April 9, 1936, and particularly subdivision 1 of section 92 thereof. That subdivision reads: " To order support of a wife or child or both irrespective of whether either is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties."

As I read the language of the amendment, I find the intended purpose thereof as the State Legislature conceived it, was to make a radical change in the law. Under the original provision of the act so far as the requirement to support one's spouse was concerned, proof was to be adduced in certain circumstances to show the likelihood of the dependent spouse becoming a public charge or that she actually was a public charge. The amended subdivision clearly indicates that it was the intention of the State Legislature that even in so far as a dependent spouse is concerned, an order for her support might be made by the court as justice requires and the *circumstances of the respective parties may permit.* In so far as the obligation of a parent for the support of his child, there can be no doubt, as there was no doubt, that the obligation was alive and present.

The State Legislature in its wisdom, and I hope in response to a more progressive viewpoint, amended the act so that not only shall the rights of parties before the court be resolved as reflected in the specific statutory provision, but also as justice dictates.

The court is mindful of the fact that both the respondent and his ex-wife and the petitioner have equal rights before it. It is in response to justice to be done between the parties that an order is required to be made herein for the support and maintenance of the infant child even though it is now without the jurisdiction. The father cannot be heard to complain of such an order. It is merely imposing upon him an obligation which he should voluntarily assume since the natural law commands it. Moreover, it is an obligation which the statute law requires.

On the petition herein, the law as it now stands and as it has been construed and in response to the statute, the motion to dismiss the petition is denied, and, upon all of the testimony herein, an order is made requiring the respondent to contribute a sum of money weekly as is in the order specified for the maintenance and support of his child.