## TAYLOR et al. v. MILAM et al.
### Civ. No. 441.

United States District Court
W. D. Arkansas, Hot Springs Division.
April 15, 1950.

Scott Wood of Wood & Chesnutt, Hot Springs, Arkansas, for plaintiffs.

Eugene Matthews of Wooton, Land & Matthews, Hot Springs, Arkansas, for defendants.

JOHN E. MILLER, Judge.

This cause was originally filed in the State Court and removed to this court on the ground of diversity of citizenship and jurisdictional amount. There is now before the court a motion to remand alleging that the court is without jurisdiction because one of the plaintiffs, Mariam Taylor Gaylord, and some of the defendants were citizens of the same state, California, at the time the suit was commenced. Defendants, in the removal petition, alleged that this plaintiff was a citizen of Arkansas, in which event complete diversity would be present, and thus, the citizenship of plaintiff, Mariam Taylor Gaylord, is the issue raised by the motion to remand.

The parties have filed depositions and briefs in support of their respective contentions, which the court has read and considered.

■ The United States District Courts have original jurisdiction of controversies involving more than $3,000.00 between "citizens" of different States. Title 28 United States Code Annotated § 1332. Citizenship, as used here, means domicil. Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758; Garberson v. Garberson, D.C.N.D.Iowa, 82 F.Supp. 706, 707. Under the common law every person has a domicil, either assigned to him by law or, if he is capable under the law of so doing, acquired by choice. Leflar, Conflict of Laws, Sec. 13. This may be accomplished by physical presence at a new place coinciding with the state of mind regarding the new place as home, or as otherwise stated, with the present intention of residing there indefinitely. Williamson v. Osenton, supra; Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366; Garberson v. Garberson, supra; Leflar, Conflict of Laws, Sec. 13.

■ The question of domicil is one of mixed law and fact. In this case, the actual occurrences are not in dispute and disclose that Mariam Taylor Gaylord, hereinafter referred to as plaintiff, lived in Hot Springs, Arkansas, until the time of her marriage, December 28, 1927, to Edward C. Gaylord. Thereafter, they moved to Chicago and lived there until 1934, at which time they returned to Hot Springs, where they lived until 1944. From 1934 until 1944, Mr. Gaylord and the plaintiff operated a dairy, and he was employed at various times by the Department of Interior and at an aluminum plant in Arkansas. Plaintiff did no outside work during this period.

In October, 1944, Mr. Gaylord and plaintiff went to California with the now stated intention of making it their home. While in California Mr. Gaylord and plaintiff lived at Puente, California, in a house adjoining the home of his daughter and her husband, Mr. and Mrs. Thomas Santo. During this period Mr. Gaylord operated his own fruit stand for two or three months and for the remainder of the time worked at Goodyear Rubber Company in Los Angeles. The plaintiff did no outside work while in California. In May, 1945, Mr. Gaylord and plaintiff stored their furniture and returned to Hot Springs for

the purpose of taking care of plaintiff's mother, who lived in Hot Springs, with the intention of returning to California with her mother when the latter's health permitted.

Mr. Gaylord stayed in Hot Springs from May, 1945 until November, 1946. During the period between December, 1945, and November, 1946, he worked for the Methodist Hospital. Plaintiff was employed by the same hospital from October, 1945, until November, 1946, and thereafter accepted employment in the office of Dr. Warren W. Chamberlain, a Hot Springs surgeon, where she has worked continuously since that time to the present.

After leaving his employment in Hot Springs with the Methodist Hospital, Mr. Gaylord returned to Puente, California, moved into the home of his son-in-law, and for a time operated a meat market in his son-in-law's grocery store. In December, 1947, he returned to Hot Springs to visit his wife for six weeks, and in January, 1948, returned to California to operate a service station in partnership with his son-in-law. Mr. Gaylord registered in California as a voter and has voted there; pays his personal taxes there; makes his income tax returns in that state; was a charter member of the Lion's Club in Puente; lives as a member of his son-in-law's family in the latter's home; and regards California as his present home.

Plaintiff, since returning to Hot Springs in 1945 has lived in her mother's home in that City. Both she and her husband paid an Arkansas Poll Tax for the year 1945 and voted in the 1946 elections. Plaintiff assessed her personal property in 1945 in Arkansas and has paid the tax thereon each year, although she has not reassessed since then. She has purchased a poll tax for herself and her husband each year, including 1949, and she has voted each year in Arkansas. In September of 1946, plaintiff obtained a Notary Public's commission for Garland County, taking the oath to support the Constitution of the United States and of the State of Arkansas, and has been acting in this capacity since that time, and is now so acting. Plaintiff filed a separate income tax return for 1947 in Arkansas, but for 1948, Mr. Gaylord filed a joint return for both himself and plaintiff in California.

Plaintiff's marital relations have at all times been amicable. She has returned to California for approximately three weeks each year since 1947, during her vacation from her work, and in regard to her state of mind, plaintiff, in her deposition, stated: "I always claim California as my home, we always planned to make California our home when conditions are so that we can."

As to Mr. Gaylord, the facts disclose that, at the time this suit was commenced in this court, he was physically present in California and did regard California as his home, and the court concludes that he was domiciled in California.

■ This raises the first question before the court. Plaintiff contends that being a married woman on amicable terms with her husband her domicil is thereby fixed at the same place as his. Unquestionably this was true under the old common law. Leflar, Conflict of Laws, Sec. 14, for citation of authorities. However, the reason for this rule was the then prevalent but now outmoded view of the husband and wife as one legal entity. By adjudication and legislation the "disabilities" of married women have been almost universally removed so that in all practical respects the husband and wife stand on equal footing as regards control over the other. As stated by Mr. Justice Holmes in Williamson v. Osenton, supra, 232 U.S. at page 625, 34 S.Ct. at page 443, 58 L.Ed. 758: "The only reason that could be offered for not recognizing the fact of the plaintiff's actual change, if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. * * * We see no reason why the wife who justifiably has left her husband should not have the same choice of domicil for an action for damages that she has against her husband for a divorce."

It is true that the first deviations from the old rule appeared in divorce cases, in which

instance the "home" was destroyed and there was clearly no reason for the fiction of one. The accepted theory of jurisdiction to grant divorces at the domicil of either required this result. See, Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273. However, at the present time there appears to be no sound reason for limiting the right of a married woman to acquire a separate domicil. Restatement, Conflict of Laws, Sec. 28, provides: "If a wife lives apart from her husband, she can have a separate domicil."

And, Comment (a) thereunder reads: "The acquisition of a domicil by a person legally capable of changing his domicil depends upon his physical presence in a place with intent to make that place his home. When a married woman was under such disabilities that she was not capable of doing many acts involving legal consequences for herself, it was natural that a court should declare that she could not acquire a domicil apart from her husband. With the change in the status of the married woman so that few, if any, of her common law disabilities remain, the determination of her domicil is based upon the same tests employed to determine the domicil of any other person who may act for himself."

■ It should be noted that the court views this as a federal question involving determination of its jurisdiction under the provisions of the Constitution and Federal Statutes, and therefore, the court is not bound by the law of any State on the subject.

Therefore, since the domicil of the plaintiff is not necessarily, as a matter of law, the same as that of her husband, the facts must be examined to ascertain where she was domiciled at the time this suit was commenced.

■ It takes no particular period of time to acquire a new domicil, the result being achieved when the person is physically present in the new place with a state of mind regarding the new place as home. When Mr. Gaylord and the plaintiff moved to California in 1944 they did so for the purpose of establishing a new home there, and the acts previously set forth done by them while in California are entirely consistent with their stated intention of making that State their new home. Therefore, California became the domicil of both plaintiff and her husband at that time.

■ A domicil once established continues until superseded by a new domicil. Restatement, Conflict of Laws, Sec. 23; Leflar, Conflict of Laws, Sec. 13. Did the plaintiff thereafter acquire a new domicil in Arkansas?

The court concludes that she did not. True, she has been physically present in Arkansas, but the evidence does not disclose that she ever had the requisite state of mind of regarding Arkansas as her home. She and her husband have always been on amicable terms and have never been separated in the sense of a marital split. There is no dispute as to this, and it is noted that in 1948 plaintiff and her husband filed a joint income tax return in California. Her stated purpose in returning to and staying in Arkansas is borne out by the facts. It is undisputed that her mother is in bad health, and that plaintiff resides with her and takes care of her. Her acts of paying personal property taxes, voting and acting as a notary, which are certainly proper for consideration on state of mind but not conclusive, are not inconsistent with the conclusion of the court when it is remembered that the plaintiff is not schooled in the technicalities of the law of citizenship and domicil. After she and her husband had been back in Arkansas for some time it became apparent that her mother would not be able to make the trip to California, so her husband returned, leaving plaintiff in Arkansas, with the understanding that plaintiff would join him as soon as conditions permitted. There was at no time an intention to abandon their California home for a new home in Arkansas.

■ It is true that plaintiff returned to Arkansas "for an indefinite time", but not in the sense approved by the court in Williamson v. Osenton, supra, relied on by defendants. For here, it was not "a time to which the plaintiff did not then contem-

plate an end", which, after all, is but another way of saying a present intention to make the new place your home. Plaintiff came to Arkansas to take care of her mother and at all times intended to return to her husband and home in California as soon as reasonably possible. Mere length of time cannot convert physical presence or residence into domicil. As stated above, the facts simply do not disclose the requisite state of mind.

Therefore, plaintiff's domicil remained in California, and as she is, and was at the time this suit was commenced, a citizen of the same State as some of the defendants, this cause does not fall within the original jurisdiction of this court, and the motion to remand must be sustained.

An order in accordance with the above will be entered.