[Cite as *Oakwood v. Harrison Twp.*, 2013-Ohio-298.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF OAKWOOD | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.  25278 |
| v. | : | T.C. NO.  11MSC134 |
| HARRISON TOWNSHIP, et al. | : | (Civil appeal from Common Pleas Court, Probate Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ____1st____ day of ____February____, 2013.

. . . . . . . . . .

JAMES G. KORDIK, Atty. Reg. No. 0022700 and DAVID M. PIXLEY, Atty. Reg. No. 0083453, 40 N. Main Street, Suite 2160, Dayton, Ohio 45423

ROBERT F. JACQUES, Atty. Reg. No. 0075142, City of Oakwood Law Director, 30 Park Avenue, Dayton, Ohio 45419
        Attorneys for Plaintiff-Appellee

DOUGLAS M. TROUT, Atty. Reg. No. 0072027, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Harrison Township ("the Township"), filed July 13, 2012. The Township appeals from the trial court's June 13, 2012 "Decision and Entry Granting Declaratory Judgment and other Relief in Favor of Plaintiff City of Oakwood." We hereby affirm the judgment of the trial court.

{¶ 2} On April 20, 2011, the City of Oakwood ("the City"), filed its "Complaint for Declaratory Judgment, Injunction and other Relief," in relevant part against the Township, in the Probate Division of the Montgomery County Court of Common Pleas. The complaint alleges that John Lenz died on or about April 6, 2009, and that the address identified on his death certificate, 3301 Klepinger Road, Dayton, Ohio 45406, is located within the Township. According to the complaint, the Klepinger Road address is zoned for industrial and commercial use and it is "the physical location of Lenz, Inc., a hydraulic component manufacturing corporation owned by Lenz at the time of his death." The complaint further alleges that Lenz never resided at the Klepinger Road address, and that at the time of his death, he owned at least five single family residential properties in the City, which included 215 Spirea Drive, 228 Harman Boulevard, 335 Shafor Boulevard, 2765 Ridgeway Road, and 325 Far Hills Avenue ("Lenz's Oakwood properties").

{¶ 3} According to the Complaint, from the mid-1970's until his death, Lenz and R. Ann Wagner were involved in a romantic relationship. The City notes in its complaint that this Court previously affirmed the decision of the probate court that Ann Wagner was not Lenz's common law spouse. *Douple v. Wagner*, 2d Dist. Montgomery No. 24228, 2011-Ohio-1281. According to the complaint, in the course of their relationship, Lenz and Wagner cohabited in Lenz's Oakwood properties. The complaint further alleges that Lenz claimed the "rollback exemption" for his Oakwood properties provided by R.C. 323.152(B),

which reduces the real property tax on owner-occupied property by 2 ½ percent. The complaint alleges that from 1999 until his death, Lenz's primary residence was his home at 335 Shafor Boulevard, and that Lenz "was domiciled in the City of Oakwood, Ohio."

{¶ 4} The City sought declaratory judgment "as to the rights, duties, and obligations of the parties as to the proper administration of the Ohio estate tax with respect to the estate of John Lenz." The City further sought access to Lenz's confidential estate tax information, pursuant to R.C. 5731.90. Finally, the City sought to have Lenz's death certificate amended, since it is "erroneous insofar as it designates Lenz's place of domicile as being the address of the Klepinger Road Property," and it sought correction or amendment of Lenz's Ohio estate tax return.

{¶ 5} The parties entered into a joint stipulation of facts, filed on March 14, 2012. On April 2, 2012, the Township filed a Motion for Summary Judgment on the City's claim for declaratory relief. The Township asserted that there was "no evidence that John Lenz established a domicile at any one location within the City of Oakwood." The Township further argued that Lenz "did not pay any income taxes to the City of Oakwood during his lifetime." Finally, the Township asserted that "all documentary evidence indicates that domicile is in Harrison Township."

{¶ 6} On April 2, 2012, the City filed a Motion for Summary Judgment, in which it asserted that "the evidence available to this Court overwhelmingly supports a finding that Lenz physically resided in Oakwood and his intention was to make Oakwood his domicile." On April 16, 2012, the City opposed the Township's Motion for Summary Judgment.

{¶ 7} On May 23, 2012, the probate court issued a decision granting the City's

Motion for Summary Judgment. The court incorporated the parties' "Stipulation of Facts and Evidentiary Matters" by reference into the decision. It further noted that the court held a hearing on June 29, 2010 in *Douple v. Wagner*, mentioned above, "wherein many of the agreed upon facts were received into testimony. The parties agreed to incorporate the testimony in that case by reference into the Stipulations." The court concluded "that Lenz and his long time live-in companion, Ann Wagner, used the 335 Shafor Boulevard as their principal residence in Oakwood at the time of Lenz's death," and that "on the date of his death, John Lenz's domicile was the City of Oakwood."

{¶ 8}  On June 12, 2012, the City filed a "Motion for Declaratory Judgment and other Relief in Favor of Plaintiff City of Oakwood," which the probate court granted. According to the probate court, it did so in "light of the fact that Lenz was domiciled in the City of Oakwood as of his death, and based on the findings and rationale set forth in its MSJ Decision."

{¶ 9}  The Township asserts one assignment of error herein as follows:

"THE TRIAL COURT ERRED BY FINDING THAT JOHN LENZ WAS DOMICILED IN THE CITY OF OAKWOOD."

{¶ 10}  As the City asserts, we apply a de novo standard of review herein. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586.

{¶ 11}  As the probate court noted, the taxes on a decedent's intangible person property are distributed to the political subdivision where the decedent was domiciled at the time of his death. R.C. 5731.51. "The very meaning of domicile is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights

and duties that have been attached to it by the law may be determined. * * * ." *Williamson v. Osenton* (1914), 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758. "'The domicile of a person is the place where he has his true, fixed, permanent home and principal establishment. It is the place to which he intends to return whenever he is absent, and from which he has no present intent to move.'" *In re Estate of Mallory*, 11th Dist. Trumball No. 2005-T-0028, 2006-Ohio-1265, ¶ 16, quoting 36 Ohio Jurisprudence 3d (1982), Domicile, Section 2. "A man may have more than one residence although he can have only one domicile. See Grant v. Jones, 39 Ohio St. 506, 515; 17 American Jurisprudence, 594, Section 9." *State ex rel. Klink v. Eyrich* (1952), 157 Ohio St. 338, 343, 105 N.E.2d 399.

{¶ 12} As the Eleventh District noted in *City of Warren v. Rebhan*, 11th Dist. Trumbull No. 2011-Ohio-0011, 2011-Ohio-6340, ¶ 25-27:

A person's domicile will persist and remain the same until he or she acquires a new one. * * * "A person abandons his old domicile and acquires a new one only when he chooses a new domicile, and demonstrates a clear intent that the new domicile become his primary and permanent residence." * * * The acquisition of a new domicile requires two elements: the factum, or residence, and the animus, or an intention to remain. * * * The Supreme Court of Ohio, quoting an eloquent judgment entry from the Clermont County Probate Court, has consequently emphasized:

"'When a person's legal residence is once fixed * * * it requires both fact and intention to change it. In other words, to effect a change of domicile from one locality, country, or state to another, there must be an actual

abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place, with the intention of making the last acquired residence a permanent home. The acts of the person must correspond with such purpose. The change of residence must be voluntary; the residence at the place chosen for the domicile must be actual and to the fact of residence there must be added the animus manendi, which means the mind to remain.'" *In re Estate of Hutson* (1956), 165 Ohio St. 115, 119, 133 N.E.2d 347.

Pursuant to *Hutson*, therefore, the abandonment of a former domicile and the acquisition of a new one happens only by the concurrence of both the fact of a new residence and the intent to remain in that residence.

**{¶ 13}** In *Rebhan*, the decedent was initially domiciled in the city of Warren, Ohio, and then he changed his domicile to Vienna Township. The *Rebhan* court acknowledged "that it is difficult to ascertain what a person's intentions are at any given time; this is particularly so when the individual in question is not available to provide some insight into his or her thoughts and desires." *Id.*, ¶ 36. In such a case, the *Rebhan* court determined that "a court must therefor draw its conclusions from the facts and circumstances surrounding the case as developed by testimony and other evidence." *Id.*

**{¶ 14}** The court additionally noted as follows:

The testimony of the decedent's children, ex-wife, close friends, and business associates demonstrated that the decedent had lived at the Vienna property from approximately 2000 or 2001 until the date of his death. The

uncontroverted evidence also showed that, for at least five years before the decedent's death, family and holiday gatherings were held at the Vienna property. Alternatively, no such gatherings had been held at the Warren property since 1995 * * * . Moreover, the evidence revealed that, prior to the decedent's death, the Vienna property was the residence at which the decedent ate, "unwound," slept, and ultimately, was the place he could be found, if needed. In light of these points, the decedent's ex-wife, friends, and close business associates testified the decedent, as far as they were aware, "lived" at the residence on the Vienna property. *Id*., ¶ 9.

{¶ 15} The city of Warren argued that the fact that the decedent received his mail at the Warren address as well as the fact that he listed the Warren address on various "legal certifications and registrations" established that the Warren property was his domicile. *Id*., ¶ 33. It was significant to the court, however, that the decedent's children "testified that their father was an intensely private individual and, as a result, preferred that strangers not know that he actually lived in Vienna Township. By listing the Warren property as his mailing address, he could avoid potentially bothersome attention he might otherwise receive by having his mail delivered to the Vienna property." *Id*., ¶ 34. The decedent's children further "indicated that the decedent kept an office at the Warren property that he regularly visited at the end of each work day. By retaining the Warren property as his mailing address, the decedent could attend to his mail at an office rather than having it clutter his home." *Id*.

{¶ 16} The decedent's "driver's license, various motor vehicle registrations, and his will included the city of Warren address," and the court determined that "these documents

simply indicate that the Warren property was a residence of the decedent," and "using the city of Warren address would be consistent with * * * [the] testimony that, as much as possible, the decedent valued his personal privacy." *Id*., ¶ 35. Various additional exhibits, including the decedent's tax returns, W-2s, death certificate and bank account bore the Vienna Township address, and the court noted that the "issue of domicile is not a 'battle of forms.'" The court affirmed the probate court's judgment that the decedent was domiciled in Vienna Township.

{¶ 17} Regarding the facts and circumstances surrounding this matter, the parties' Joint Stipulation provides that the address of 3301 Klepinger Road is identified on Lenz's death certificate as his address as of the date of his death. The Joint Stipulation further provides that 3301 Klepinger Road is the "physical location of Lenz, Inc., a hydraulic component manufacturing corporation that was owned in whole or in party by Lenz at his death." Further, according to the Joint Stipulation, the Klepinger Road property is "situated in a district that is zoned for industrial and/or commercial use," and the property "consists of approximately 2.75 acres and contains an approximately 23,220 square foot structure utilized for manufacturing and light industrial uses." The Joint Stipulation provides that the property is "not situated in a district that is zoned for residential use." The Joint Stipulation identifies Lenz's Oakwood properties as single family residences, and provides that Lenz claimed a "2 ½ per cent property tax exemption" for each of those properties. The Joint Stipulation provides that prior to his death, Lenz "predominantly used P.O.Box 1044, Dayton, Ohio 45401, and the Klepinger Road property address as his mailing address." The Joint Stipulation reflects the amount of Ohio estate taxes Lenz's estate has

paid and the County Treasurer has collected. Also, the Joint Stipulation reflects the amount of municipal income taxes and interest due for the tax years of 1998 through 2009 that Lenz's estate has paid to the City. Finally, the stipulation provides that attorney Daryl Douple prepared and filed an Application for Authority to Administer Estate, in which he represented that Lenz's domicile at the date of his death was 3301 Klepinger Road, and that Lenz's address was identified on the Ohio estate tax return or returns as being at 3301 Klepinger Road, which is in the Township.

{¶ 18} The transcript of the hearing in *Douple v. Wagner et al*, the declaratory judgment action at which Ann Wagner asserted that she was Lenz's common law spouse, reflects further evidence that Lenz was domiciled in Oakwood at the time of his death. At the start of her testimony, Ann identified her address as 335 Shafor Boulevard. She testified that she met Lenz in 1975, and that she and John "were together most of the time." She stated that she "cooked and washed, cleaned with my son Robert. Did a lot of cleaning of houses." When asked what John took care of when they were together, Ann replied, "I lived in his houses and * * * drove his cars, cooked his food, was his companion." Ann stated that early in their relationship, if she did not return to her apartment, she and John would sleep primarily at 228 Harman Boulevard and 338 Central Avenue, in Dayton. Ann testified that she did Lenz's laundry and grocery shopping. Ann testified that Lenz often called her "Mrs. Lenz." She identified an estimate for windows at the Harman Boulevard address, dated August 25, 1983, in the name of Mr. and Mrs. John Lenz.

{¶ 19} According to Ann, Lenz was "very private," and he did not want an obituary, or a viewing, or any media coverage of his death. Ann stated that Lenz injured his leg in

1997, and that he was in a wheelchair after that for 12 years, until his death. Regarding his care, Ann testified, "I bathed him, I cut his hair, put drops in his eyes * * * fed him. And I lifted him in and out of the wheelchair and in the house, whatever to get him in the van to take him places." Ann testified, "I took care of him for 12 years. After his accident - -after his accident, day and night and then he had a chauffeur, who would pick him up and take him to * * * the office in the afternoon." Ann identified the address of 3301 Klepinger Road as the "physical address" of his company.

{¶ 20} Robert Wagner, Ann's son, testified that he met Lenz in 1975, when Lenz began dating Ann, and that Lenz treated him like a son. Robert stated that he referred to Lenz as his step-father. Robert stated that he began working for Lenz in 1976 and that he "took over or assumed the role as far as managing the corporation." At the time of Lenz's death, Robert stated that he was vice president of the company, and Lenz was president. Robert stated that when he met Lenz, Robert was living with Ann at "1431 Tabor, Apartment B," and Lenz lived at 338 Central Avenue, in Dayton, a home Robert stated Lenz still owned at the time of his death.

{¶ 21} Robert stated that Lenz owned several homes, and that he rarely titled them in his own name, because he "didn't want anybody to know who he was." Robert stated that Lenz purchased homes at 215 Spirea and 232 Spirea in Oakwood for Ann. He stated that he also purchased a home at 2300 Ridgeway Rd., in Oakwood, and he stated that Lenz "and mom were going to live there on a one floor ranch because this did not have a basement, did not have stairs except for going up to the second floor but it had several bedrooms on the first floor." Robert stated that Lenz purchased the home at 325 Far Hills

Avenue, in Oakwood so "that he could work out of it at night because he was a night owl. And he did not want to go up to the office anymore in his later life. He wanted to be closer to mom and the other homes at night." Robert stated that Lenz purchased the home at 335 Shafor Boulevard in the name of Buckeye Leasing and Investment Company, "for mom and John. And they both liked it." Robert stated that Lenz's accident occurred at the 228 Harman Boulevard address, when Lenz "was reaching down to get a key underneath the driver's or passenger side car seat because that's where he always kept his keys. And he fainted. * * * and then was stuck. His knee was caught between the driver's seat and the back of the coupe." Robert stated that Lenz was "stuck" for "over 12 hours," and that at the time Ann was "trying to reach him all over," by "calling different houses."

{¶ 22} According to Robert, after Lenz's accident, the Shafor Boulevard address became their principal residence, because "[i]t was easy access for the wheelchair. One floor, the halls were wide and it was just easy to maintain." Robert testified that Lenz purchased the home at 2765 Ridgeway Road "for preservation. Because there was a rumor this home was being split up into parcels. John wanted to preserve the home so it would remain intact, historical." Robert stated the home is "known as High Acres which belonged to the Rike's family." Robert testified that Lenz had five wheelchairs at the Oakwood properties.

{¶ 23} Joe Nonnamaker testified that he was Lenz's accountant. He stated that Lenz and Ann "were always together. I mean they lived together. The best of my knowledge they were private people. Not that sociable. On John and Ann's tax return, it did not show an address. His tax return was the post office box."

**{¶ 24}** Daryl Douple testified that he drafted Lenz's will, which Lenz signed on May 4, 1995. When asked if he was aware of the extent of Lenz's estate, Douple stated that he "hadn't spoken to Mr. Lenz really, since I wrote his will or he signed his will. So again, I assumed he had significant assets but no, I did not know the extent of the specific nature of those assets." We note that in discovery responses, which are attached to the City's motion for summary judgment, Douple admitted that "at the time I filed my application to administer the Estate of John Lenz in May, 2009, I had no direct, personal knowledge where John Lenz primarily resided as of his date of death."

**{¶ 25}** As the probate court correctly determined, the evidence is clear that after Lenz met Ann Wagner and their relationship progressed, Lenz purchased multiple properties in Oakwood in which the couple resided. Robert identified the Shafor Boulevard property as the couple's primary residence after John's accident, and at the time of the hearing in June, 2010, Ann still resided at that address. There is no evidence in the record that Lenz ever resided at the Klepinger Road address, and Ann identified that address as the physical location of Lenz's business. That Lenz used the Klepinger Road address as a mailing address, as in *Rebhan,* is consistent with Lenz's private nature. Robert testified that after his accident, Lenz purchased the Far Hills Avenue property to use as an office because he no longer wanted to commute to the Township but rather wanted to work close to Ann and his Oakwood homes. The parties stipulated that the Klepinger Road address was zoned for industrial use, and it did not contain a residential structure. Lenz received tax benefits available for owner-occupied property in Oakwood.

**{¶ 26}** As the probate court determined, while Lenz "house hopped" between his

homes, all of those homes were in Oakwood. As the City asserts,"[i]f a person lived in two homes, one in Political Subdivision A and the other in Political Subdivision B, it would be necessary to determine which specific home was the place of domicile because it would affect the allocation of estate tax proceeds. But if a person lived in two homes, both in Political Subdivision A, such pinpointing is not required," since Political Subdivision A is the political subdivision of domicile. There is no evidence that Lenz continued to reside at 338 Central Avenue in Dayton. Although he moved from house to house, his "house hopping" was limited to residential properties located in the City. As the *Rebhan* court determined, domicile is determined by where the decedent made his home, and not by a mailing address. Finally, the parties stipulated that Lenz's estate paid local income tax to the City for the tax years 1998 through 2009 after his death, and as the City asserts, "there is only one logical explanation as to why the Estate paid local income taxes to the City from 1998 through 2009. Lenz was a resident in Oakwood for over twenty years." As the probate court determined, it is clear from the evidence that after his accident, which left him wheelchair bound, Lenz lived with and was cared for by Ann primarily at the Shafor Boulevard address, where Ann continued to live after Lenz's death. Finally, Douple had not spoken to Lenz since 1995, and his use of the Klepinger Road address in the estate filings is not dispositive of Lenz's domicile. Douple admitted that he was unaware of Lenz's primary residence when he applied to administer his estate, and there is no evidence that Lenz ever lived in Harrison Township.

**{¶ 27}** Accordingly, the probate court correctly granted judgment in favor of the City since the evidence in the record, when viewed in a light most favorable to Harrison

Township, leads a reasonable mind to but one conclusion, that is, Lenz died domiciled in Oakwood.   Judgment affirmed.

. . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

James G. Kordik
David M. Pixley
Robert F. Jacques
Douglas M. Trout
Hon. Alice O. McCollum