Carmen Iris RIVERA, Plaintiff,

v.

**HOSPITAL INTERAMERICANO DE MEDICINA AVANZA et al., Defendants.**

No. Civ. 00–1185JP.

United States District Court,
D. Puerto Rico.

Dec. 5, 2000.

**12**

Luis R. Rivera–Rodríguez, Hato Rey, PR, for plaintiff.

José H. Vivas, Héctor Ramírez Carbó, Vivas & Vivas, Ponce, PR, Fernando E. Agrait–Betancourt, San Juan, PR, Pedro J. Córdova–Pelegrina, San Juan, PR, for defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

The Court has before it co-Defendants Dr. Rafael E. Medina Rivera and Instituto de Endoscopía Digestiva's ("IED Defendants") Motion for Summary Judgment Because of Lack of Diversity Jurisdiction (docket No. 37); Hospital Interamericano de Medicina Avanzada's ("HIMA") Motion Joining Motion for Summary Judgment for Lack of Diversity Jurisdiction (docket No. 45); Plaintiff's Opposition to Motion for Summary Judgment due to Lack of Diversity Jurisdiction (docket No. 46); Plaintiff's Motion Supplementing Opposition to Motion for Summary Judgment due to Lack for Diversity of Jurisdiction [sic] (docket No. 63); Co–Defendant HIMA's Memorandum of Law in Support of Motion for Partial Summary Judgment (docket No. 68); and Plaintiff Rivera Perez's Motion in Opposition to co-Defendant HIMA's Motion for Partial Summary Judgment (docket No. 76).

Plaintiff Carmen Iris Rivera Perez ("Rivera") filed her original Complaint on February 9, 2000 under Article 1802 of the Puerto Rico Civil Code, alleging that she suffered injuries as a result of medical malpractice on the part of Defendants, and invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332 because she claims that she is domiciled in New York while all Defendants are domiciled in Puerto Rico. Thereafter, on June 16, 2000, Plaintiff amended her Complaint to include two new parties.[1] Plaintiff seeks a total of $3,300,000.00 (three million, three hundred

---

1. These two parties, Dr. Ramón Sotomayor and Dr. Miguel Palacios, were subsequently dismissed from the action pursuant to Plaintiff's Motion for Voluntary Dismissal and this Court's Judgment (docket No. 54).

thousand dollars) in damages, in addition to interest, expenses and attorney's fees.

The IED Defendants and co-Defendant HIMA contend that this Court does not have diversity jurisdiction over the instant case. Accordingly, they moved for summary judgment pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] Defendants argue that Plaintiff had not established the requisite minimal contacts with New York, where she alleges that she was residing, at the time she filed the Complaint sufficient to warrant diversity of citizenship. Co–Defendant HIMA has also moved for Partial Summary Judgment on its own behalf arguing that Plaintiff's allegations against it are unsubstantiated and unfounded, and fail to amount to a cause of action for which relief can be granted.

A brief history of the proceedings in this case is now in order. On May 17, 2000, the Court held an Initial Scheduling Conference ("ISC") in which all of the parties were present. This case has been fraught with discovery problems as a result of each party's non-compliance with the orders of this Court. At the ISC, the Court set trial for January 16, 2001, the pre-trial conference for December 5, 2000 at 4:00 p.m. and allowed until October 31, 2000 for the filing of dispositive motions. Additionally, the Court granted until September 1, 2000 for the announcement of additional witnesses. The ISC Order specifically read:

If any party wishes to use any additional witnesses, it will be discretionary with the Court, provided that the parties state in writing on or before *September 1, 2000* the following information regarding each additional witness: name and address with a short statement as to the subject matter of their testimony, and proof that the names of these witnesses, or the fact that their testimony was decidedly material, was not known at the time of this Initial Scheduling Conference, and the reason why they were not known. *In the case of a proposed expert witness*, the party requesting leave to amend the witness list shall also provide the expert's report to the Court and to the defendant within two weeks of the request, which must include all the information specified in Rule 26(2)(B) of the Federal Rules of Civil Procedure and any information requested in the Initial Scheduling Conference Call.

Despite the ISC Order's specific instructions and deadlines regarding expert witnesses, the IED co-Defendants attempted to introduce their proposed expert, Dr. Lawrence Brandt, and file his report on September 13, 2000, thirteen days after the deadline. In furtherance of effective pre-trial management, the Court denied the IED Defendants' motion for an extension of time in which to file said report, and also denied their subsequent motion for reconsideration.[3]

2. The IED Defendants filed a summary judgment motion contesting diversity jurisdiction on August 24, 2000 which co-Defendant HIMA joined on September 6, 2000.

3. The IED Defendants were warned on no less than two occasions that if Dr. Brandt's expert witness report was not filed by September 1, 2000, his testimony would not be allowed. *See* ISC Order § IV (docket No. 25); Order (docket No. 48). To be sure, all attorneys practicing before this Court are expected to be well versed in pre-trial practice. They are encouraged to read *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986) authored by the undersigned Judge, and peruse the Civil Justice Reform Act, codified at 28 U.S.C.A. §§ 471–482 (West 1993) in

order to understand the necessity of adhering to orders concerning pre-trial discovery. The federal docket is replete with costly time consuming litigation. The importance of this Court's ISC and its resulting Order is to streamline this litigation and reduce the cost and delay that so frequently characterizes it. The IED Defendants' non-compliance with the ISC Order's deadline to announce additional witnesses in the instant case flew in the face of this Court's pre-trial procedure, and upset its case management system. Rule 37 of the Federal Rules of Civil Procedure provides that if a court enters an order compelling discovery but a party does not comply with it, the court may prohibit that party from introducing designated matters into evidence. Fed.R.Civ.P. 37(b)(2); *see also United States*

Shortly thereafter, on September 28, 2000, the Court dismissed the claims against co-Defendants Dr. Ramón Sotomayor and Dr. Miguel Palacios pursuant to Plaintiff's motion for voluntary dismissal. Pursuant thereto, on the same day, co-Defendant HIMA moved to include Dr. Sotomayor and Dr. Palacios as additional witnesses since it claimed that it anticipated that the doctors would have been parties in the action and as such, they could question them at trial without having to announce them as witnesses. The Court granted co-Defendant HIMA's request under the condition that HIMA demonstrate *total* compliance with the following:

> [Dr. Sotomayor and Dr. Palacios] must each produce a expert medical report in accordance with Rule 26 of the Federal Rules of Civil Procedure because in the Court's opinion, any doctor testifying as to his professional acts or the professional acts of others is an expert and cannot disentangle his expert opinion from the fact that he is also a witness. Further, ... if they are to be admitted as witnesses, they must file an expert report and curriculum vitae in accordance with Rule 26 on or before *November 25, 2000,* serving the other parties by same-day messenger.[4]

Order (docket No. 71).

While these discovery disputes were before the Court, Plaintiff twice cancelled the scheduled depositions of two of her expert witnesses, Dr. Joseph Garren and Dr. George Gusset. On October 16, 2000, it came to the Court's attention that these witnesses had never been produced by Plaintiff on the dates arranged for their respective depositions, and therefore had never been deposed by Defendants. Plaintiff's actions were in direct violation of the Court's ISC Order and its subsequent rescheduling Order (docket No. 39). There-

fore, as a sanction for Plaintiff's non-compliance, the Court permitted the testimony of Dr. Brandt, Defendant's expert witness whose testimony was previously excluded by the Court. The Court also re-set the deposition dates for Dr. Gussett and Dr. Garren.

■ In addition, the Court is disturbed by the fact that it has had to order both parties to file English language translations to exhibits on numerous occasions throughout this case. Local Rule 108.1 requires that any document filed with this Court in a language other than English be accompanied by a certified translation. Despite this well-established rule, Plaintiff has opted to file her Motion in Opposition to co-Defendant HIMA's Motion for Partial Summary Judgment (docket No. 76) with Spanish language exhibits. Because the deposition excerpt attached to Plaintiff's motion is in Spanish, and Plaintiff did not provide an English translation upon filing, the Court **DECLINES** to consider the exhibits as part of the record on summary judgment. The Court also **WILL NOT** accept the English translations filed nine days later. *See* Local Rule 108.1; *see also Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 50 n. 4 (1st Cir.2000) (finding that appellants had waived arguments premised on documents for which they had not provided translations); *U.S. for Use and Ben. of Elec. Machinery Enteprises of Puerto Rico, Inc. v. Fraya, S.E. and Continental Ins. Co.*, 145 F.3d 1, 3 (1st Cir.1998) (Pieras J.).

The primary summary judgment motion before the Court is for dismissal based on lack of diversity jurisdiction. For reasons stated herein, this Court **GRANTS** Defendant's Motion for Summary Judgment based on Lack of Subject Matter Jurisdiction. The Court need only proceed to address findings of fact and conclusions of

---

*Fidelity & Guaranty Co. v. Baker Material Handling Corp.*, 62 F.3d 24, 29 (1st Cir.1995). Accordingly, this Court prohibited the testimony of Dr. Lawrence Brandt.

4. Since November 25, 2000 fell on a Saturday, Dr. Sotomayor's and Dr. Palacios' curriculum vitae and expert witness reports were due on the first working-day thereafter, on Monday, November 27, 2000.

law with respect to diversity jurisdiction because, as a result of its finding that it lacks subject matter jurisdiction over this action, HIMA's partial summary judgment motion on the merits is rendered **MOOT**.

## II. UNCONTESTED FACTS

Based on the record and the parties' contentions, the Court finds the following facts to be undisputed:

1. At the time that she filed the Complaint Plaintiff was 57 years old.

2. On August 12, 2000, Plaintiff was deposed.

3. During the August 12, 2000 deposition, when asked the question "Where do you live now?", Plaintiff replied "E–21 1 Street, Condado ... now? That thing is that that is my house."

4. Plaintiff's husband was in the United States Army.

5. Plaintiff married her husband in 1963. Her husband and adult daughter live in Puerto Rico.

6. Plaintiff lived in Caguas, Puerto Rico for all of her life except from 1963 to 1977 when she lived with her husband in New York. She returned to Puerto Rico in 1977.

7. On January 28, 2000, Plaintiff left Puerto Rico and moved into her cousin's home at 1335 Balcon Avenue in the Bronx, New York.

8. Plaintiff filed her Complaint in the instant action on February 9, 2000, approximately twelve (12) days after leaving Puerto Rico.

9. Plaintiff receives medical treatment in New York.

10. Plaintiff was issued two interim drivers licenses for the state of New York.

11. Plaintiff does not own any property in New York.

12. On February 9, 2000, Plaintiff was not registered to vote in New York.

13. Plaintiff is not employed in New York.

14. Plaintiff does not own any bank accounts in New York.

15. Plaintiff owns two properties in Puerto Rico; a home at Condado Moderno in Caguas, Puerto Rico and Seminar Child Care Center located at B–27 Estanbol St. in Caguas, which is her family's business.

16. Plaintiff worked at Seminar Child Care Center as a child-care worker until February 8, 1999, two days before her colonoscopy.

17. Co–Defendant Dr. Rafael E. Medina Rivera is a physician licensed to practice medicine within the Commonwealth of Puerto Rico, and maintains an office to practice medicine in Caguas, Puerto Rico.

18. Co–Defendant Instituto de Endoscopía Digestiva, Inc., located in Caguas, Puerto Rico, is a licensed institution, a domestic corporation registered and authorized to do business in the Commonwealth of Puerto Rico and established under the laws of Puerto Rico.

19. Co–Defendant Hospital Interamericano de Medicina Avanzada, located in Caguas, Puerto Rico, is a licensed hospital and domestic corporation registered and authorized to do business in the Commonwealth of Puerto Rico and established under the laws of the Commonwealth of Puerto Rico.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affida-

vits, viewed in the light most favorable to the nonmoving party, [in this case the plaintiff,] reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Insurance Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992).

In a summary judgment motion, the movant [in this case the defendant], bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party [in this case the plaintiff] who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116.

## IV. LEGAL ANALYSIS

■ Federal courts are courts of limited jurisdiction, and statutes which grant jurisdiction must be strictly construed. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). This medical malpractice case involves no federal question jurisdiction. Therefore, it would have been an issue for a state court

to decide but for the fact that Plaintiff invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Had this action been filed in state court, Plaintiff would not have been entitled to trial by jury, because, in this jurisdiction (Puerto Rico), a trial by jury is not available in civil cases.[5] Understandably, because juries tend to render high verdicts, malpractice plaintiffs might prefer to have their actions adjudicated in federal forums.

■ Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. 28 U.S.C. § 1332(a)(1); *CT. Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990); *see also De Mauro v. De Mauro*, 115 F.3d 94, 95, n. 1 (1st Cir.1997) (when the plaintiffs and the defendants were New Hampshire residents, the action must be dismissed for lack of complete diversity); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir.1992). For purposes of diversity jurisdiction, citizenship is determined as of the date that a plaintiff files a lawsuit. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205, 1209 n. 1 (1957); *Bank One, Texas, N.A.*, 964 F.2d at 49. Therefore, the issue before this Court is whether Plaintiff was domiciled in New York or in Puerto Rico on February 9, 2000, the date on which she filed her Complaint.

■■ Domicile generally requires two elements: 1) presence in the alleged state of domicile, and 2) the intent to remain there. *Bank One, Texas, N.A.*, 964 F.2d at 50; *Valedon Martinez v. Hospital Presbiteriano de la Comunidad, Inc.*, 806 F.2d 1128, 1132 (1st Cir.1986); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3613 (1984). Long settled case law holds that state citizenship is equivalent to domicile for purposes of determining diversity jurisdiction. *Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442,

---

**5.** However, Article VI of the Constitution of the United States ensures a right to trial by jury for defendants in criminal cases, regardless of the jurisdiction.

58 L.Ed. 758 (1914); *Lundquist v. Precision Valley Aviation Inc.*, 946 F.2d 8, 10 (1st Cir.1991). In addressing the issue of domicile, this Circuit has held that "[t]he relevant standard is 'citizenship,' i.e. 'domicile,' not mere residence; a party may reside in more than one state but can be domiciled, for diversity purposes, in only one." *Lundquist*, 946 F.2d at 10. The First Circuit has also held that "a person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning'." *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir.1988) (citing 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure §§ 3612, at 526 (1984)).

 The law presumes that once a domicile is acquired, it continues until a new domicile is established. *Bank One, Texas, N.A.* 964 F.2d at 50 (citing *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir.1979). Thus, a plaintiff who claims to have changed his domicile carries a heavy burden to demonstrate that he has established a new domicile, in order for the previously established domicile to not control. *Id.; White v. All America Cable & Radio, Inc.*, 642 F.Supp. 69, 72 (D.Puerto Rico 1986). Moreover, once diversity jurisdiction is challenged, a plaintiff asserting it must demonstrate the facts supporting diversity jurisdiction by a preponderance of the evidence. *Bank One, Texas, N.A.*, 964 F.2d at 50; *Alicia–Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.Puerto Rico 1998) ("It is the party seeking to invoke the federal court's jurisdiction by asserting change in domicile that has the burden of proving such change by clear and convincing evidence."); *see also White v. All America Cable and Radio, Inc.*, 642 F.Supp. 69, 72 (D.Puerto Rico 1986). The factors relevant to determining a person's domicile include 1) the person's place of voting; 2) the location of the person's real property; 3) the state issuing the person's drivers license; 4) the state where the person's bank accounts are maintained; 5) the state where the person has a club or church membership; and 6) the state where the person is employed. *Bank One, Texas, N.A.*, 964 F.2d at 50.

 In this case, Plaintiff alleges that she was domiciled in New York on February 9, 2000, the date in which she filed her Complaint. Defendants, who are all domiciliaries of Puerto Rico, challenge this Court's jurisdiction by asserting that Plaintiff's domicile on the date that the Complaint was filed was Puerto Rico. Plaintiff countered Defendants' evidence with documents illustrating that she has been receiving medical treatment in New York; her sworn affidavit stating that she resides in New York; received medical treatment there and intends to remain there; a New York voter registration card showing that Plaintiff registered to vote on February 22, 2000; a New York State drivers license issued in May 2000, approximately three-months after she filed her complaint; and excerpts from her deposition transcript in which she states that she intends to remain in New York.[6] However,

---

6. Plaintiff offers the following documents to illustrate that she has been receiving medical treatment in New York: copies of 1) her medical bracelet listing her cousin's apartment in Bronx, N.Y. as her address; 2) an emergency room prescription made out for Plaintiff from Bronx–Lebanon Hospital Center dated February 15, 2000; 3) two receipts from Burnside Medical Center in Bronx, N.Y. dated February 14, 2000 and February 16, 2000, (the latter states that Plaintiff was examined at the facility); 4) a referral for Plaintiff from Soundview Healthcare Network in Bronx, N.Y. dated February 14, 2000; 5) medical documents from Burnside Medical Center dated February 14, 2000; 6) receipts from Bronx–Lebanon Hospital Center Emergency Medical Service dated February 14, 2000 and February 15, 2000, and a Doctor's Bedside Note and a Nurse's Note dated February 15, 2000 and February 16, 2000 respectively. Clearly, these records are dated after February 9, 2000. As previously stated herein, a person's domicile or citizenship is determined as of the date that a plaintiff files a lawsuit. *Smith* 354 U.S. at 93 n. 1, 77 S.Ct at 1114 n. 1; *Bank*

remaining in a new residence in order to obtain medical care does not amount to a change in domicile for diversity of citizenship purposes. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3613 at p. 547.

 The Court further notes that a party's bare declaration of domicile, which is self-serving in nature, is accorded little weight when in conflict with objective facts. *Kressen v. National Ins. Co.*, 648 F.Supp. 1165, 1167 (D.Puerto Rico 1986) (Pieras J.) (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985)). We now turn to the facts which are undisputed.

Plaintiff does not own any property in New York. However, she owns a home in Puerto Rico as well as a child care business there. She does not work in New York and she could not vote in New York on February 9, 2000, the operative date for determining diversity jurisdiction. She does not hold any bank accounts in New York even though she has received medical treatment there and does have two New York interim driver's licenses.[7] Nonetheless, on the date that Plaintiff filed the Complaint in the instant action, she had only been in New York for a total of twelve (12) days. In contrast, Plaintiff has been domiciled in Puerto Rico as of 1977, when she returned to the island with her family. Her husband and at least one daughter currently live there.

As a general rule, no single factor is wholly determinative of diversity. *Bank One, Texas, N.A.*, 964 F.2d at 50. However, the First Circuit has stated that the state where a person is registered to vote is a "weighty" factor in determining domicile. *Id.* (citing *Lundquist* 946 F.2d at 12). It is undisputed that Plaintiff was not registered to vote in New York on the date that she filed her Complaint.

 After reviewing all the evidence before it, the Court cannot say that on February 9, 2000, Plaintiff was domiciled in New York. Therefore, Plaintiff has failed to carry her burden of establishing that she had acquired a domicile in New York as of the date that she filed her Complaint. *Bank One, Texas, N.A.*, 964 F.2d at 50; *Alicea–Rivera*, 12 F.Supp.2d at 245; *White*, 642 F.Supp. 69, 72 (D.Puerto Rico 1986). Rather, the evidence shows that Plaintiff was residing in New York at the home of her cousin, but was domiciled in Puerto Rico. *See Bank One. Texas, N.A.*, 964 F.2d at 50; *Valedon Martinez*, 806 F.2d at 1132; Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3613 at p. 544. Residence and domicile are not synonymous for purposes of diversity jurisdiction. *See Lundquist*, 946 F.2d at 10. Accordingly, the Court finds that at the time of commencing the suit, Plaintiff was a domiciliary of Puerto Rico. The Court need go no further.

## V. CONCLUSION

In view of the foregoing discussion, this Court hereby **DISMISSES** the Complaint for lack of diversity jurisdiction.

**IT IS SO ORDERED.**

---

One, Texas, N.A., 964 F.2d at 49. Therefore, the records dated after February 9, 2000 are not relevant to this Court's determination of whether or not Plaintiff was domiciled in New York on February 9, 2000.

7. As proof that she is a domiciliary of New York, Plaintiff has also submitted a New York

State drivers license that was issued in May of 2000. However, as previously noted, since this license post-dates the date that Plaintiff filed her Complaint, it cannot be considered as evidence that she was domiciled in New York when the action was commenced.