Allen L. León **RIBAS**, et al., Plaintiffs,

v.

**PONCE YACHT & FISHING CLUB, INC.** et al., Defendants.

Civil No. 02–2585(DRD).

United States District Court, D. Puerto Rico.

April 30, 2004.

Ruben T. Nigaglioni, Ruben T. Nigaglioni Law Offices, San Juan, PR, Veronica Ferraiuoli–Hornedo, Nigaglioni & Ferraiuoli, Hato Rey, PR, for Plaintiffs.

Charles DeMier–LeBlanc, De Corral & De Mier, Pedro J. Cordova–Pelegrina, Miranda Cardenas & Cordova Law Office, Roberto E. Ruiz–Comas, Gonzalez Villamil Law Office, San Juan, PR, for Defendants.

Hector F. Oliveras–Delgado, Pinto–Lugo, Oliveras & Ortiz, PS, Juan F. Matos–Bonet, San Juan, PR, for Third Party Defendant.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Co–Defendants', RESTHIELD DEYNES D/B/A MIDNIGHT EXPRESS' and its insurance carrier Seguros Triple S, Motion for Summary Judgment[1] where Co–Defendants request from this Court to dismiss the present action due to Plaintiffs failure to comply with the requirements asserting diversity of citizenship jurisdiction (Docket No. 30).

Said request was joined by Co–Defendant PONCE YACHT & FISHING CLUB, INC.(Docket No. 31). Plaintiffs opposed to said request asserting that they complied with the federal diversity requirements (Docket No.34).

The case at bar is a tort action in which the Court's diversity jurisdiction was invoked pursuant to 28 U.S.C. § 1332. Plaintiffs are a minor who allegedly suffered catastrophic injuries resulting from an electric shock received while attending a Halloween Party held at the facilities of the PONCE YACHT CLUB, her parents and siblings. At the time of the incident, the Plaintiffs lived in Ponce, Puerto Rico. On June 13, 2002, they relocated to Orlando, Florida, where they were residing at the time of the filing of this action.

After considering the pleadings, the documentary evidence attached to the parties' motions, and the testimony received during the evidentiary hearing held on December 8, 2003, the Court hereby finds that the Plaintiffs were citizens of the State of Florida at the time of the filing of the complaint. Accordingly, the Court **DENIES** Co–Defendants' motion for summary judgment due to lack of jurisdiction.

### I.

On October 24, 2002, Co–Plaintiffs Allen Leon, his wife Maritere Soto, their conju-

---

1. The proper submittal should have been a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1). *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001)("The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1).") The Court, however, sometimes "must resolve disputed facts [in a Jurisdictional challenge](or at least, choose among competing inferences from subsidiary facts)." Id. p. 365. Since under the Summary Judgment standard, the Court is banned from making credibility determinations and/or weighting of the evidence, *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d, 184, 187 (1st Cir.1997), and further because the Court must examine the evidence "in the light must flattering to the non-movant and indulge all reasonable inferences in the party's favor", *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994), the Summary Judgment standard is inapposite. The Summary Judgment standard in jurisdictional challenges leads to mischief since under Rule 12(b)(1) "the Court must address the merits of the jurisdictional claims by resolving the factual disputes between the parties." *Valentin v. Hospital Bella Vista*, 254 F.3d at 363.

gal partnership and their three minor children Maritere, Monica and Camille, hereinafter the "Plaintiffs", filed a complaint invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C § 1332. Essentially, Plaintiffs alleged Co–Defendants' liability resulting from an accident that occurred at the facilities of the Ponce Yacht & Club on October 31, 2001 when their oldest child, Maritere, while playing at a Halloween "Foam Party" sponsored by the Club, received an electrical shock suffering physical damages.

Co–Defendants, Resthield Deynes, Seguros Triple S and Ponce Yacht and Fishing Club sustain that Plaintiffs have failed to comply with the requirements for asserting diversity jurisdiction, since they were not domiciled in Florida but rather in Puerto Rico at the time of the filing of this complaint. Plaintiffs claim that the facts unequivocally demonstrate that Plaintiffs were domiciled in Florida at the time of the filing of the instant case and continue to be there as of today.

## II.

■ Federal courts are courts of limited jurisdiction. This Court has the responsibility "to police the border of federal jurisdiction". *Spielman v. Genzyme Corp.*, 251 F.3d 1 (1st Cir.2001). The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." *del Rosario Ortega v. Star Kist Foods*, 213 F.Supp.2d 84, 88 (D.Puerto Rico 2002) citing *Conventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 3 (1st Cir.1995). Therefore, a party that seeks the jurisdiction of the federal courts, has the burden of demonstrating its existence. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995).

■ As courts of limited jurisdiction, federal courts have the duty of construing jurisdiction-granting statutes strictly. *See, e.g., Alicea–Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.Puerto Rico 1998). Here, Plaintiffs have invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir.1994). Since Co–Defendants have challenged Plaintiffs' jurisdictional allegations, Plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Bank One v. Montle*, 964 F.2d 48, 50 (1st Cir.1992); *Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F.Supp.2d 11, 17 (D.P.R.2000).[2]

■ For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. *Valentin v. Hospital Bella Vista*, 254 F.3d at 361; *Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F.Supp.2d at 16. Accordingly, the critical date here is October 24, 2002, the date of the filing of the complaint.

■ For purposes of diversity jurisdiction, a person's domicile is equivalent to his citizenship. *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *Valentin v. Hospital Bella Vista*, 254 F.3d at 366. A person is considered to be a citizen of the state in which he is domiciled. *Lundquist v. Precision Val-*

---

**2.** The Court has discretion as to the manner in which preliminary questions of jurisdiction are to be resolved and enjoys broad authority "to order discovery, consider extrinsic evidence, hold evidentiary hearings and make findings of fact in order to determine its own jurisdiction." *Valentin v. Hospital Bella Vista*, 254 F.3d at 363.

ley Aviation, Inc., 946 F.2d 8, 10 (1st Cir.1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. *Valentin v. Hospital Bella Vista*, 254 F.3d at 366. A person's domicile is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir.1988) *(internal citations omitted )*.

A party can only have one domicile at a time. *Valentin v. Hospital Bella Vista*, 254 F.3d at 367. However, a change of one's legal domicile can occur instantly. *Morris v. Gilmer*, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889). All that is required is:

> First, residence in a new domicile; and second, the intention to remain there. There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently. A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile.
>
> To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least. There is no minimum period of residency required ... It has long been the rule that motive for the change in residence is irrelevant in determining domicile. *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979) *(internal citations omitted )*.

In determining the Plaintiffs' domicile, the Court must focus on that party's intent and must consider the totality of the evidence. The place of residence is *prima facie* evidence of a parties' domicile. *See Macone v. Nelson*, 274 F.Supp.2d 136, 140 (D.P.R.2003). However, the Court must also consider all factors which are relevant to a domicile determination, among which the following are the most common: (1) the place where civil and political rights are exercised; (2) where taxes are paid; (3) where the person has his real and personal property located; (4) drivers and other licenses obtained; (5) where bank accounts are maintained; (6) the location of club and church membership; and (7) places of business and employment. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d at 10. No single factor is wholly determinative. *Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F.Supp.2d at 18. However, the First Circuit considers registration to vote a "weighty" factor in ascertaining domicile, *id.;* in this case even more so since only legal residents of the State of Florida are qualified to register or vote in local elections, § 97.041, Fla. Stat.

A defendant who challenges the existence of diversity jurisdiction, can launch the challenge in either of two ways. "The first way is to mount a challenge which accepts the plaintiff's version of the jurisdictionally-significant facts as true and addresses the sufficiency". *Valentin v. Hospital Bella Vista*, 254 F.3d at 363. This type of challenge requires "the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id. citations omitted*. The second way to challenge the existence of diversity jurisdiction "is by controverting the accuracy (rather than the sufficiency)of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." Id. This type of challenge, unlike a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), demands a "differential fact finding". Therefore, the court must address the merits of the jurisdictional claim "by resolving the factual disputes between the parties" with-

out providing plaintiff's averments any presumptive weight. Id. The Court understands it is faced with a challenge of the jurisdictional facts asserted by the Plaintiffs.

### III.

■ The uncontested evidence presented by the parties have convinced this Court that the Plaintiffs changed their domicile from Puerto Rico to Florida prior to the filing of this complaint. These facts are the following:

1. On June 13, 2002, Plaintiffs physically relocated to Orlando, Florida, where they have resided uninterruptedly.

2. On July 5, 2003, Plaintiffs leased an apartment at: 5536 Metro West Boulevard, Apt. 102, Orlando, Florida 32811. They lived at that address at the time that the complaint was filed and have continued to reside at this address. At this time, Plaintiffs have no intention of relocating from that apartment. The monthly rental payments for the apartment is $779.00. They pay for the following services and utilities: water, electricity, cable TV and phone.

3. On July 22, 2002, Co–Plaintiff, León Ribas, filed a *Declaration of Domicile* under oath pursuant to § 222.17, Fla. Stat. stating that he became a resident of the State of Florida on June 13, 2002 and that he resides at 5536 Metro West Boulevard, Apt. 102, Orlando, Florida 32811. He also stated under oath that his former residence was the city of Ponce, Puerto Rico.

4. At the time of the filing of the complaint, Plaintiffs still owned a house in Ponce, Puerto Rico. Plaintiffs have not made an effort to sell this house because, pursuant to Co–Plaintiff's Leon Ribas testimony, given the low interest rates prevailing in the market, they opine that their money is better invested in real estate property in Puerto Rico than in any other investment vehicle currently available. Neither have they made an effort to rent the property because they refuse to have strangers that will not take proper care of their house and, thus, of their investment. The monthly mortgage payment on the house in Ponce is far less than the monthly rental fee for their apartment in Orlando. Since June 13, 2002, the Ponce house has remained unoccupied except for two weeks during the Summer of 2003 when the Plaintiffs vacationed in Puerto Rico.

5. Plaintiffs receive all their correspondence in their Orlando home, including all loans' and credit cards' bills. At their house in Ponce, they receive monthly minimum bills for the water and electric service. Plaintiffs do not have cable TV nor telephone service at the Ponce house. The Plaintiffs have not filed a change-of-address form with the U.S. Postal Service. However, family members forward, to their current address in Orlando, any miscellaneous mail received at the Ponce house.

6. Plaintiffs shipped most of their household goods and furniture to their new residence in Orlando. The house in Ponce is minimally furnished with that furniture that does not fit in Plaintiffs' Orlando apartment or furniture which would be uneconomical to ship.

7. Prior to departing for Florida, Co–Plaintiff, León Ribas permanently resigned from his employment with Banco Popular de Puerto Rico, where he had worked for the previous seventeen (17) years. After moving to Florida but prior to filing the complaint in this case, Co–Plaintiff, León Ribas obtained employment with Unibank as

Assistant Branch Manager at the Orlando Branch. Recently, Co–Plaintiff, León Ribas was promoted to Branch Manager at the Orlando Branch of Un-IBANK. As the former employment in Puerto Rico, the employment at Florida is undetermined in time and at will. (These are not fixed terms employment contracts).As a result, at the time that the complaint was filed, Co–Plaintiff León Ribas did not have any employment ties with Puerto Rico.

8. Prior to departing for Florida, Co–Plaintiff, Teresita Soto, permanently resigned from her employment with VENEGAS CONSTRUCTION, where she worked for the previous sixteen (16) years. After moving to Florida, Co–Plaintiff, Teresita Soto did not initially seek employment because she had to devote her full time to taking care of her injured daughter Maritere. Recently, however, Co–Plaintiff Teresita Soto was hired as an Assistant Teacher by the Orange County Public Schools to work at the same school that her daughters attend. Accordingly, at the time that the complaint in this case was filed, Co–Plaintiff, Teresita Soto did not have any employment ties with Puerto Rico.

9. Prior to moving to Florida, the Plaintiffs owned two vehicles in Puerto Rico. Before moving to Florida, the Plaintiffs sold one of their cars in Puerto Rico and shipped their second car to their new home. The vehicle that was shipped to Florida was registered with the Florida Department of Motor Vehicles in the name of Co–Plaintiff, León Ribas at his Florida address. Plaintiffs also acquired a new vehicle in Florida, which is registered with the Florida Department of Motor Vehicles in the name of Co–Plaintiff, Teresita Soto, at her Florida address. The car insurance policies on both of the Plaintiffs' vehicles was secured in Florida through Cooperativa de Seguros Múltiples de Puerto Rico at the Orlando branch office. In sum, on the date that this complaint was filed, Plaintiffs did not own any vehicles in Puerto Rico while they owned two vehicles in Florida.

10. At the time of filing the complaint, Plaintiffs had obtained drivers' licenses issued by the State of Florida. Co–Plaintiff, León Ribas, testified during the Hearing that he was required to surrender his Puerto Rico's driver's license upon obtaining Florida's license.

11. On July 23, 2002, Plaintiffs filed an *Application for Disabled Parking Permit Placard* with the Department of Highway Safety and Motor Vehicle of the State of Florida (for the automobiles being used by the disabled minor, Maritere). Plaintiffs hold no such placard from the Puerto Rico authorities.

12. Prior to filing this complaint, Co–Plaintiffs, Leon Ribas and his wife Teresita Soto became registered voters in the State of Florida. They have both exercised their political rights in Florida having voted in the last mayoral and gubernatorial elections in said State. In contrast, said Co–Plaintiffs have not exercised any political rights in Puerto Rico since they relocated to Florida, and have no intention of doing so in the future.

13. After moving to Florida, Co–Plaintiffs, minors Maritere, Monica and Camille were enrolled in schools in Florida. At the time that the complaint was filed, two of them attended the Sadler Elementary School, a public school in Orlando, and the third one attended a private parochial

school. All three minors currently attend Sadler Elementary. The availability of adequate special education for their now-disabled daughter, Maritere, was decisive in the Plaintiffs' decision to move to Florida. During Spring of 2003, Co–Plaintiff, Teresita Soto enrolled in an English course at the Valencia Community College. Accordingly, none of the Plaintiffs had any educational ties with Puerto Rico at the time that the complaint was filed.

14. On March 31, 2003, Co–Plaintiffs, Leon Ribas and Teresita Soto filed the U.S. Individual Income Tax Return for the taxable year 2002 listing their address at 5536 Metro West Boulevard, Apt. 102, Orlando, Florida 32811. Co–Plaintiffs also filed an individual income tax return for the Commonwealth of Puerto Rico for the salaries they received from sources within Puerto Rico until May 31, 2002. In the later tax return, Co–Plaintiffs stated under oath that they were not residents of Puerto Rico at the end of the 2002 taxable year and provided, to the local tax authorities, their Orlando address. Plaintiffs do not intend to file subsequent P.R. tax returns since they have not received income from work performed in Puerto Rico since they moved to Florida.

15. Plaintiffs' principal checking and savings accounts are kept at UNIBANK's Orlando Branch; almost all of the family daily expenses are paid for from this account. The Plaintiffs also have a bank account at Banco Popular in Puerto Rico which was opened in the early 1980's. This account has a balance of approximately $2,000.00 and is used merely to make the modest payments for the water, electricity and other maintenance payments related to the Plaintiffs' real estate investment in Ponce. All of Plaintiffs' bank accounts—those with UNIBANK and those with Banco Popular—list the Plaintiffs' address in Florida. Moreover, there are numerous Banco Popular branches in Florida.

16. Since leaving Puerto Rico, the Plaintiffs have not opened any credit accounts in Puerto Rico nor have they undertaken any new loans with institutions located in Puerto Rico. The Plaintiffs are still paying for a five-year loan that they undertook in 1999, while Co–Plaintiff León Ribas was employed at Banco Popular in Puerto Rico. The amount of said loan has been reduced at present to the low $2,000.00. In contrast, since moving to Florida, Plaintiffs have undertaken loans with financial institutions located in that state. Furthermore, the Citibank credit card issued to Plaintiffs while they resided in Puerto Rico was canceled by Citibank as a result of Plaintiffs' change of residence.

17. Prior to the filing of this complaint, the Plaintiffs cashed all their non real estate investments held in Puerto Rico's banks. Said investments included: Co–Plaintiff León Riba's 401K Retirement Plan, his Banco Popular Employees Stock Option Plan, and Co–Plaintiff Teresita Soto's I.R.A. Those funds were deposited in Plaintiffs' Unibank account prior to the filing of this complaint. The taxes owed for cashing out these investments were included in Plaintiffs' U.S. Individual Income Tax Return, not in the tax return filed with the Commonwealth of Puerto Rico.

18. Plaintiffs' daily activities take place in Orlando. That is the place they reside and call home, and it is the place

in which they shop for their everyday necessities and return to when they spent time away from home.

19. Since residing in Florida, the Plaintiffs have attended and became members of the St. John Vianney Parish in Florida to which they periodically donate money. At the time of the filing of the complaint, they had no church affiliation in Puerto Rico. Further, the Plaintiffs do not belong to any social club in Puerto Rico.

20. After they moved to Florida, the Plaintiffs have been treated by physicians in the Orlando area. In Co–Plaintiff Maritere's particular case, her neurologist, pediatrician, speech therapist, visual therapist, physical therapist and occupational therapist are all located in the Orlando area. She has not visited any physicians in Puerto Rico since she moved to Florida. The quality of the health care and their minimal costs was critical in the Plaintiffs' decision to move to Florida. Co–Plaintiffs Maritere, Monica and Camille are enrolled in Florida's Kidcare's Insurance. They are not enrolled in any health insurance plan in Puerto Rico.

21. In the Summer of 2003, Plaintiffs vacationed in Puerto Rico for two weeks and thereafter returned to their home in Orlando, Florida. This was the first time that they had returned to Puerto Rico since June 13, 2002. Co–Plaintiffs León Ribas and Teresita Soto stayed at the Ponce house during their visit. Co–Plaintiffs Maritere, Monica and Camille stayed with family members because—due to the fact that most of the furniture had been shipped to Florida—there were not enough beds for all the Plaintiffs to stay at the Ponce house.

These facts, as well as Co–Plaintiff León Ribas' demeanor during the evidentiary hearing, have convinced this Court that the Plaintiffs' moved to Florida with the genuine intent of residing in that State indefinitely. The motives for changing their residence are irrelevant for our purposes. *Bank One v. Montle,* 964 F.2d at 53.

### IV.

The evidence makes it abundantly clear that the Plaintiffs' "true, fixed home and principal establishment" is and has been since they moved there in June 13, 2002 in Orlando, Florida. The Court harbors no doubt that at the time that this complaint was filed, the Plaintiffs did not have any intention of returning to Puerto Rico. Thus, their true domicile is in Orlando, Florida where they conduct their daily and essential functions of life.

For the foregoing reasons, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 to entertain Plaintiffs' claims and, thus, **DENIES** the Defendants' motion for summary judgment (Docket No. 30).

**IT IS SO ORDERED.**