Roberto **CRUZ–MARTINEZ** and Damaris Fuentes–Rodriguez, on behalf of their minor daughter, Adriana Cruz Fuentes Plaintiff,

v.

**HOSPITAL HERMANOS MELENDEZ, INC. et als. Defendants.**

No. CIV.05 1328 PG.

United States District Court, D. Puerto Rico.

Feb. 20, 2007.

Alberto J. Perez–Hernandez, David Efron, David Efron Law Offices, San Juan, PR, for Roberto Cruz–Martinez, Damaris Fuentes–Rodriguez, Adriana Cruz–Fuentes minor, Plaintiffs.

Eric J. Berlingeri–Vincenti, De Corral & De Mier, Raphael Pena–Ramon, De Corral & De Mier, Linda Backiel, Linda Backiel Law Office, San Juan, PR, for Hospital Hermanos Melendez, Inc., Dr. Jose J. Mimoso, Jane Doe 05cv1328 wife of Dr. Mimoso, C/P Mimoso–Doe, XYZ Insurance Company, Defendants.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Before the Court is co-defendant Dr. Jose J. Mimoso's (hereinafter "Dr. Mimo-

so") Motion to Dismiss for Lack of Diversity Jurisdiction (Docket No. 38) where co-defendant requested the dismissal of the present action because Plaintiff's domicile, as well as Defendants', is in Puerto Rico, and thus, Plaintiff cannot assert the jurisdiction of this Court. Plaintiff opposed said request claiming diversity exists between the opposing parties because her domicile is in the State of Florida. (Docket No. 51.) Co-defendant Dr. Mimoso also requested an evidentiary hearing be scheduled on the issue of diversity jurisdiction, and the Court granted his request.

The case at bar is a tort claim in which the Court's diversity jurisdiction was invoked pursuant to 28 U.S.C. § 1332. Plaintiff Adriana Cruz–Fuentes (hereinafter "Adriana" or "Plaintiff") is a minor herein represented by her mother and father, Damaris Fuentes–Rodriguez ("Mrs. Fuentes") and Roberto Cruz–Martinez ("Mr.Cruz"), respectively, who allegedly suffered permanent neurological damage at the time of her birth. Plaintiff was born in Bayamon, Puerto Rico on April 25, 1987 at Hospital Hermanos Meléndez, Inc. (hereinafter "HHMI" or "the Hospital"). In May 2004, Plaintiff and her parents moved to Orlando, Florida, where they were residing when they filed the complaint. Plaintiff is suing defendants Dr. Mimoso and the Hospital for damages pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141–5142.

After considering the pleadings, the documentary evidence attached to the parties' motions, and the testimony received during the evidentiary hearing held on January 24, 2007, the Court hereby finds that Plaintiff and her legal custodians and parents were citizens of the State of Florida at the time of the filing of the complaint. Accordingly, the Court **DENIES** co-defendant's motion to dismiss for lack of diversity jurisdiction.

## I. BACKGROUND

On March 23, 2005, Mr. Cruz and Mrs. Fuentes filed the instant tort claim as parents and legal representatives of their minor daughter, Adriana, invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Essentially, Plaintiff alleges that treating physician, Dr. Mimoso, and the caring hospital, HHMI, should be held responsible for Adriana's neurological defects. According to the allegations in the complaint, Defendants departed from the standards of care in the medical treatment provided to Adriana and her mother at the time of her birth and the days thereafter. (Docket No. 1.) Co-defendants Dr. Mimoso and HHMI answered the Complaint and denied all responsibility for the alleged damages. (Docket Nos. 8 and 12.)

Co-defendant Dr. Mimoso sustains that Plaintiff has failed to comply with the requirements of asserting diversity jurisdiction since Plaintiff and her parents were not domiciled in Florida, but rather in Puerto Rico, when they filed the complaint. Because Defendants are also domiciled in Puerto Rico, Dr. Mimoso claims there is no diversity among the parties to this action, and this Court lacks subject matter jurisdiction. Plaintiff opposed co-defendant's contentions and purports that the evidence put forth demonstrates that minor Adriana and her parents were citizens of the State of Florida at the time the complaint was filed, and intend to remain there indefinitely.

## II. DISCUSSION

### A. Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. "Federal courts have jurisdiction over controversies arising between 'citizens of different states,' provided that the amount in controversy exceeds

$75,000." *Garcia Perez v. Santaella,* 364 F.3d 348, 350 (1st Cir.2004); see also 28 U.S.C. § 1332(a)(1). This Court has the responsibility "to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001). The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." del *Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R.2002) (citing *Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 3 (1st Cir.1995)).

▪ A party that seeks the jurisdiction of the federal courts has the burden of demonstrating its existence. *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995). Here, Plaintiff invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *Casas Office Machines v. Mita Copystar America, Inc.,* 42 F.3d 668, 673 (1st Cir.1994). Since co-Defendant challenged Plaintiff's jurisdictional allegations, Plaintiff bears the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Bank One v. Montle,* 964 F.2d 48, 50 (1st Cir. 1992); *Rivera v. Hosp. Interamericano de Medicina Avanzada,* 125 F.Supp.2d 11, 17 (D.P.R.2000).

▪ For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 361 (1st Cir.2001); *Rivera v. Hosp. Interamericano de Medicina Avanzada,* 125 F.Supp.2d at 16. Accordingly, the critical date here is March 23, 2005, the date of the filing of the complaint.

▪ For purposes of diversity jurisdiction, a person's domicile is equivalent to his citizenship. *Williamson v. Osenton,* 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed.

758 (1914); *Valentin v. Hospital Bella Vista,* 254 F.3d at 366. A person is considered to be a citizen of the state in which he is domiciled. *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 10 (1st Cir.1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. *Valentin v. Hospital Bella Vista,* 254 F.3d at 366. There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently. A "floating intention" to return to a former domicile does not prevent the acquisition of a new domicile. *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 701 (1st Cir.1979) (internal citations omitted).

▪ A person's domicile is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Rodriguez–Diaz v. Sierra–Martinez,* 853 F.2d 1027, 1029 (1st Cir. 1988) (internal citations omitted). A party can only have one domicile at a time. *Valentin v. Hospital Bella Vista,* 254 F.3d at 367. However, a change of one's legal domicile can occur instantly. *Morris v. Gilmer,* 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889).

> To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least ... There is no minimum period of residency required. A citizen of the United States can instantly transfer his citizenship from one state to another ... A person may have only one domicile at a time, and, until a new one is acquired, the established one continues, ..., and, once acquired, the presumption is that it continues until changed. ... It has long been the rule that motive for the change in residence is irrelevant in determining domicile.

*Hawes v. Club Ecuestre El Comandante,* 598 F.2d at 701 (internal citations omitted).

▆▆▆ In determining a plaintiff's domicile, the Court must focus on that party's intent and must consider the totality of the evidence. The place of residence is *prima facie* evidence of a parties' domicile. *See Macone v. Nelson,* 274 F.Supp.2d 136, 140 (D.P.R.2003). Courts "take into account a variety of factors indicating the extent of a particular party's ties to the purported domicile ... [including] current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes...," *Garcia Perez,* 364 F.3d at 351 (*citing* 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3612 (2d ed.1984)). "However, the First Circuit considers registration to vote a 'weighty' factor in ascertaining domicile." *Rivera v. Hosp. Interamericano de Medicina Avanzada,* 125 F.Supp.2d at 18.

A court should not dismiss a complaint for lack of subject matter jurisdiction unless it is clear that plaintiff will be unable to prove any set of facts which would entitle him to recovery. See *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998); *Negron–Gaztambide,* 35 F.3d at 27 (citing *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir. 1994); *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992)). A defendant who challenges the existence of diversity jurisdiction, can launch the challenge in either of two ways. "The first way is to mount a challenge which accepts the plaintiff's version of the jurisdictionally-significant facts as true and addresses the sufficiency." *Valentin v. Hospital Bella Vista,* 254 F.3d at 363.

This type of challenge requires "the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id.* (citations omitted). The second way to challenge the existence of diversity jurisdiction "is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." *Id.* This type of challenge, which can be called a "factual challenge," demands a "differential fact finding." Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight, and the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. *Id.* "In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.,* at 363–364.

The Court understands it is faced with a "factual challenge" of the jurisdictional facts asserted by Plaintiff. Because this challenge requires that the Court engage in differential fact finding, an evidentiary hearing was scheduled.

## B. Findings of Fact

The evidence presented by the parties have convinced this Court that Plaintiff and her parents changed their domicile from Puerto Rico to Florida prior to the filing of this complaint. The facts found by the Court are the following:

1. In May 2004, Mrs. Fuentes, Mr. Cruz and their daughters physically relocated to Orlando, Florida, where they have resided uninterruptedly.

2. Mrs. Fuentes and Mr. Cruz have three children: Darializ Cruz (24 years old), Melissa Cruz (22 years old) and Adriana Cruz (19 years

old). Adriana is the minor plaintiff in this case. Darializ is married and works for the Department of Labor in the Orlando County; Melissa works at Cingular in Orlando, Florida; and, Adriana is a student at Colonial Heights high school in Orlando, Florida. The availability of better medical and educational opportunities for Adriana was the decisive factor in Mr. Cruz and Mrs. Fuentes' decision to move to the State of Florida.

3. Mrs. Fuentes and Mr. Cruz have custody of their nephews, Gabriel and Juliana Fuentes. Gabriel and Juliana attend school in Orlando, Florida.

4. Mrs. Fuentes and Mr. Cruz are not employed in Florida. In 2003, prior to moving to Orlando, Mr. Cruz retired because of a disability and lives off of his disability benefits, and Mrs. Fuentes has been a housewife ever since Adriana was born because Adriana's condition requires continuous care. The family's income consists of Mr. Cruz's social security benefits; his Veteran Administrations' disability retirement pension from Puerto Rico; Adriana, Gabriel and Juliana's social security benefits; and Melissa's income at Cingular. Therefore, other than Mr. Cruz's disability pension, Mr. Cruz and Mrs. Fuentes did not have any employment ties with Puerto Rico at the time the complaint was filed.

5. At the time of the filing of the complaint, Mr. Cruz and Mrs. Fuentes owned, and still own, a house in Toa Baja, Puerto Rico. Mrs. Fuentes' parents live in that house and pay its mortgage. The utility bills for the Toa Baja house are not under Mrs. Fuentes or Mr. Cruz's name.

6. When they decided to move to Florida, Mr. Cruz and Mrs. Fuentes determined that it was uneconomical to ship the furniture in their Toa Baja house to Florida, so Mrs. Fuentes' mother sold it for them.

7. When he resided in Puerto Rico, Mr. Cruz owned a Mazda pick-up truck which he sold before moving to Orlando, Florida. Mr. Cruz and Mrs. Fuentes acquired a vehicle in Florida which is registered with the Florida Department of Highway Safety and Motor Vehicles. The insurance policy for this car was issued by a company in Florida. Therefore, at the time the complaint was filed, Mr. Cruz and Mrs. Fuentes did not own a vehicle in Puerto Rico, while they did own a vehicle in Florida.

8. When they first moved to Orlando, Mrs. Fuentes and Mr. Cruz leased a house at: 1109 Pine Sapp Court, Orlando, Florida. They lived at that address at the time the complaint was filed. After two (2) years, they relocated to another rented house at: 7830 Bear Claw Run, Orlando, Florida. The lease agreement for their current residence expires in March 2008.

9. On July 7, 2004, Mr. Cruz filed a "Declaration of Domicile" under oath pursuant to § 222.17 Fla. Stat. stating that he became a resident of the State of Florida on June 7, 2004, and that he resides at: 1109 Pine Sapp Court, Orlando, Florida 32825. He also stated under oath that his former residence was the city of Toa Baja, Puerto Rico.

10. Prior to filing the present claim, Mr. Cruz and Mrs. Fuentes had obtained drivers' licences issued by the State of Florida. Mrs. Fuentes testified during the hearing that

she was required to surrender her Puerto Rico driver's license upon obtaining the Florida license.

11. Prior to filing the present claim, Mr. Cruz and Mrs. Fuentes became registered voters in the state of Florida.

12. In February 2005, Mr. Cruz and Mrs. Fuentes filed their federal income tax return for the taxable year 2004, listing their address as 1109 Pine Sap Ct., Orlando, FL 32825. They have been filing federal income tax returns every year since then, and they do not file tax returns in Puerto Rico.

13. Before moving to Florida, Mrs. Fuentes had a joint bank account with her mother but it was cancelled sometime thereafter. Mrs. Fuentes and Mr. Cruz opened a checking and a savings accounts at a branch of Banco Popular in Orlando, Florida, which they use to pay their bills and expenses. Mr. Cruz testified to also have store credit cards issued in the State of Florida.

14. After moving to Florida, Plaintiff Adriana has been receiving medical attention for her conditions from physicians in Orlando. Adriana has not received medical treatment in Puerto Rico since she moved to Florida. Mr. Cruz has also been medically treated by physicians in the Orlando and Tampa area. When he moved to Orlando, he had his medical records from the Veteran's Hospital in Puerto Rico transferred to the Veteran's Administration Clinic in Orlando, Florida.

15. Since moving to Orlando, Mrs. Fuentes has traveled to Puerto Rico twice. The first time, Mrs. Fuentes came to Puerto Rico because her mother had to undergo surgery. The second time, Mrs. Fuentes, Mr. Cruz and their family came to spend the 2006 Christmas holidays in Puerto Rico. After moving to Orlando, Mr. Cruz had to travel to Puerto Rico because he was summoned by the United States District Court to be a witness in a death penalty case. Since he was a government witness, the government paid for his travel expenses. After traveling to Puerto Rico, they have returned to their residence in Orlando, Florida.

16. In 1990, Mrs. Fuentes, Mr. Cruz and their family had moved to Florida seeking better medical and educational opportunities for Adriana. The Cruz–Fuentes family lived there for approximately one (1) year. They had to return to Puerto Rico because, at the time, Mr. Cruz was in the U.S. Army Reserve and when his battalion was activated, he was ordered to return to Puerto Rico. At the time, Mrs. Fuentes and Mr. Cruz left their Toa Baja house under the care of a sibling of Mr. Cruz.

17. After Mr. Cruz returned from Desert Storm, the Cruz–Fuentes family moved from Puerto Rico to Arkansas looking for better medical and educational opportunities for Adriana. They lived there for approximately two and a half years, but had to return to Puerto Rico because the cold weather was harmful to Adriana's health. During that time, they rented their Toa Baja house.

18. Mrs. Fuentes and Mr. Cruz both testified that they have no intention of returning to Puerto Rico.

The above-mentioned facts, as well as Mrs. Fuentes and Mr. Cruz's credi-

ble demeanor during the evidentiary hearing, have convinced this Court that Plaintiff and her parents and legal guardians are physically residing in the State of Florida, and have the intent to remain there indefinitely.

### III. CONCLUSION

The evidence presented makes it clear to this Court that Plaintiff's true, fixed home and principal establishment is, and has been, in Orlando, Florida since she moved there with her family in May 2004. The Court holds no doubt that at the time this complaint was filed, Plaintiff and her parents were residing in Orlando, Florida indefinitely. Thus, their true domicile is in Orlando, Florida, where they conduct their daily and indispensable life activities.

For the foregoing reasons, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 to entertain Plaintiff's claims and, thus, **DENIES** Dr. Mimoso's Motion to Dismiss for Lack of Diversity Jurisdiction (Docket No. 38).

**IT IS SO ORDERED.**